Arthur YANICK, Plaintiff,

v.

PENNSYLVANIA RAILROAD COMPANY and The New York, New Haven & Hartford Railroad Company, Defendants.

PENNSYLVANIA RAILROAD COMPANY, Defendant and Third-Party Plaintiff,

v.

PULLMAN INCORPORATED, Third-Party Defendant.

Civ. 13428.

United States District Court
E. D. New York.
March 1, 1961.

Conboy, Hewitt, O'Brien & Boardman, New York City, for Pennsylvania R. Co. Edward F. Butler, Herbert J. Kaplow, Reginald L. Duff, of counsel.

Robert Peet, New York City, for N. Y., N. H. & H. R. Co.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Pullman Incorporated. J. Roger Carroll, Peter Fleming, Jr., of counsel.

ZAVATT, District Judge.

During pre-trial conferences of this railroad accident case, a question has been raised concerning the right to use on the trial, for the purpose of impeaching a witness, prior inconsistent statements made by that witness before the Interstate Commerce Commission, or to the railroads as part of their investigation of the accident. The case arises from an accident which occurred at Un-

ion Station, Washington, D. C. when a train operated by the defendant The Pennsylvania Railroad Company (Penn) ran through the bumping block at the station. The parties before the court now are Penn, The New York, New Haven & Hartford Railroad Company (New Haven), the owner of a coach in that train that may have been defective, and Pullman Incorporated (Pullman), the manufacturer of that coach.

After the accident Penn made a report of the accident to the ICC pursuant to 45 U.S.C.A. § 38 which requires a monthly report of accidents by interstate rail carriers. It is agreed that this report may not be used for any purpose at the trial because of the mandate of 45 U.S.C.A. § 41 which provides:

> "Neither the report required by section 38 of this title nor any report of the investigation provided for in section 40 of this title nor any part thereof shall be admitted as evidence or used for any purpose in any suit or action for damages growing out of any matter mentioned in said report or investigation."

Apparently Penn conducted an investigation before it filed its report with the ICC, during the course of which it took statements from certain of its employees. Penn contends that it conducted this investigation for the purpose of preparing a section 38 report and that it based its report in part on such statements although none of the statements are incorporated in the report; that these statements must be treated as part of the section 38 report and, therefore, they come within the protection of section 41, so that the statements may not be used for any purpose on the trial.

After the section 38 report was filed by Penn, the ICC investigated the accident and took testimony pursuant to 45 U.S.C.A. § 40. The ICC held hearings in Washington on January 26 through 29, 1953, at which employees of both railroads and ICC investigators testified. The transcript of these hearings covers

over 400 pages. On February 17, 1953 the ICC made its report of the accident as required by section 40. This report of 15 pages does not incorporate the transcript. It does, however, consist of findings of fact and a recommendation. The parties agree that this report is similarly protected by section 41 and may not be used for any purpose. However, both railroads argue that the testimony of witnesses before the ICC may not be used to impeach those witnesses should they appear on this trial. Pullman takes a contrary position.*

The two railroads have cited several cases decided by both state and federal courts in support of their contentions. The cases are all distinguishable on one ground or another. Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, relied upon heavily by Penn is distinguishable because the issue considered there was the *admissibility* in evidence of statements made to the railroad as part of its accident investigation. The statement was held inadmissible, not because of section 41, but because it was not a statement recorded in the ordinary course of business within the meaning of 28 U.S.C. § 1732 and could not otherwise satisfy a hearsay exception. A closer case is Gourley v. Chicago & E. I. R. R. Co., 1938, 295 Ill.App. 160, 14 N. E.2d 842. There a witness on the stand was sought to be impeached by his prior testimony before the ICC. In the course of holding that the prior testimony could not be so used the court stated the argument of counsel that such a use would contravene section 41. However, the actual basis of the court's ruling is that the former statement was not inconsistent with the testimony on the trial and therefore would not afford a basis for impeachment.

A close but distinguishable case cited by Pullman is Mower v. McCarthy, 1952, 122 Utah 1, 245 P.2d 224. There a plaintiff sought discovery and inspection, un-

der the Utah rules, of statements taken by the defendant railroad of its crew members and other employees following an accident. The railroad argued, as do the railroads here, that the investigation should be protected by § 41 because the purpose of the prohibition was to induce the railroad to report all the facts even though they would be detrimental in case of a suit for damages. In holding that the plaintiff was entitled to the discovery sought, the court held that the prohibition of section 41 applied only to the report and not to the investigation:

"This investigation by the defendant did not constitute such a report * * *. None of the sections referred to even mentions any investigation made by the railroad company of an accident. So clearly this transcript does not come within the terms of those statutes. * * * If the language of the statute were uncertain or ambiguous as to what investigation or report was referred to then in construing this statute we could consider the purpose with other evidence showing the intent of the legislature. But here the statute is clear and unambiguous, and there is nothing in the evidence that tends to show that it did not mean just what it said. To enlarge the coverage of the statute probably would have unforeseeable consequences which were not intended by the legislature. This discovery is not prohibited by the federal statute referred to." 245 P.2d at pages 232–233. However, Castellano v. Pennsylvania - Reading Seashore Lines, D.C.E.D.Pa.1953, 15 F.R.D. 276 is contra.

In addition to the railroad reporting statutes already referred to Congress has enacted similar legislation for airplane accidents. See 49 U.S.C.A. § 1441, formerly 49 U.S.C.A. § 581. Under subsection (a) it is the duty of the Civil Aero-

---

* It seems that in addition to the investigations carried out by the railroads and the ICC, the United States Senate also held hearings. The parties agree that testimony taken before the Senate could be used for impeachment purposes.

nautics Board to investigate accidents and report the facts, conditions and circumstances relating to them and their probable cause and also to promulgate regulations governing accident reports by airlines. Pursuant to this provision regulations have been promulgated which require airlines to file accident reports with the CAB within 10 days of the accident. See 24 Fed.Reg. 1510 (Feb. 28, 1959), amending 14 C.F.R. § 320.10. Subsection (e) then provides: "No part of any report or reports of the Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports." Since this provision is almost identical to section 41 of the railroad act (at least insofar as reports of the ICC and the CAB are concerned) and because there is no reason suggested why Congress would seek to attach one set of consequences to a railroad investigation and another to an airline investigation, it is pertinent to inquire into the construction and interpretation given to section 1441(e) by the courts.

Ritts v. American Overseas Airlines, Inc., D.C.S.D.N.Y.1947, 97 F.Supp. 457 is a square holding that under the provision just referred to it was proper to use a witness' prior testimony before the CAB for purposes of present impeachment. In Lobel v. American Airlines, 2 Cir., 1951, 192 F.2d 217, the court held that a deposition of a CAB investigator and his report of the accident to the CAB were admissible as evidence. The report and the deposition contained only statements of fact (the personal observations of the investigator) and not evaluations or opinions. The court said further that the report might have been used for cross-examination. The basis of the court's decision is that section 1441(e) "was designed to guard against the introduction of CAB reports expressing agency views about matters which are within the functions of courts and juries to decide." 192 F.2d at page 220. This rationale has been the guiding principle

in the following cases: see Israel v. United States, 2 Cir., 1957, 247 F.2d 426; Universal Airline v. Eastern Air Lines, 1951, 88 U.S.App.D.C. 219, 188 F.2d 993; Tansey v. Transcontinental & Western Air, Inc., D.C.D.C.1950, 97 F.Supp. 458; Ratner v. Arrington, Fla.App.1959, 111 So.2d 82. Israel, Universal, and Ratner all concern the admissibility of the opinions of CAB investigators, as does Lobel. The Tansey case concerned a question of pre-trial discovery rather than a question of trial-use of testimony or reports and in that sense is similar to Mower v. McCarthy, supra. The court held that both the substance of the accident investigations conducted by the airline and the reports made by the airline (or its employees) to the CAB as required by regulations promulgated pursuant to law, were discoverable. Tansey is perhaps of doubtful authority in a railroad case because as we have seen the airline statute does not purport to protect the airline's reports to the CAB as the railroad statute does with respect to the railroad's reports to the ICC.

While it appears that the Ritts case is the only holding under either the railroad or the airline statutes that testimony necessary to a required report may be used for impeachment purposes even though the report itself is protected, the reasoning in the cases cited that the purpose of excluding official reports is to preserve the jury function against the prejudicial effects of official pronouncements is compelling authority for the proposition that use of testimony in a manner which cannot have that prejudicial effect is not prevented by section 41. After all, Congress in enacting these statutes did not intend to completely rewrite the law of evidence or to write a text book on that subject. There might be reason to enlarge on the plain meaning of the statute (which as we have seen does not specifically prohibit the use of testimony taken in investigation of an accident) if some underlying purpose of the statute could be furthered thereby. It is also clear that the reason for excluding official reports does not carry

over to carrier reports: juries would not be swayed by a self-serving statement of the carrier as they might by pronouncement by a governmental agency. Although the railroads have contended that the purpose of that branch of section 41 which protects carrier reports is to promote truthful accident reporting in order that the public may profit thereby, recent cases have questioned whether this is the purpose of the act. See Tansey v. Transcontinental & Western Air, Inc., supra; Mower v. McCarthy, supra. Furthermore, the railroads have not shown how this purpose will be furthered by preventing the use of investigation testimony for impeachment. It would seem that truthful reporting is given all the encouragement it needs by protecting the report itself. I think what the railroads are really saying is this: unless they are given assurance that what they discover cannot be used against them on a trial, railroads may be disinclined to investigate. It seems to me that to allow the testimony garnered by a railroad in its investigation to be used to impeach a witness on a later trial cannot have the effect of decreasing the ardor with which a carrier investigates its accidents. First, a carrier investigates with the hope of finding exculpatory facts. Second, the investigation is carried on for more reasons than purely litigational ones so that whatever the rule may be as to the litigational uses of investigations it can have only a marginal bearing on the investigation.

The Ritts case, supra, also held that prior testimony could be used to refresh the recollection of the witness on the trial. This is a use that would generally be beneficial to the railroad. Such a practice which I believe is proper—New York Civil Practice Act, § 343–a; Rule 43(a) Federal Rules of Civil Procedure, 28 U.S. C.; United States v. Dilliard, 2 Cir., 1938, 101 F.2d 829, certiorari denied 1939, 306 U.S. 635, 59 S.Ct. 484, 83 L.Ed. 1036; Puggioni v. Luckenbach S. S. Co., 2 Cir., 1961, 286 F.2d 340, will take the edge off the railroad's arguments in opposition to any impeachment use.

 I therefore rule that:

(1) Prior inconsistent testimony of a witness reflected in either testimony taken by the railroad or the ICC pursuant to the filing of required reports may be used on the trial to impeach that witness.

(2) Such testimony may also be used to refresh the recollection of the witness on the trial.

(3) Testimony embodying the opinions of ICC investigators may not be used on the trial for any purpose.