Marion J. BERGUIDO, individually, et al.

v.

EASTERN AIR LINES, INCOR-PORATED.

Civ. A. No. 21836.

United States District Court
E. D. Pennsylvania.

May 25, 1964.

B. Nathaniel Richter, Charles A. Lord, Arthur G. Raynes, Philadelphia, Pa., for plaintiffs, Frank F. Truscott, Philadelphia, Pa., of counsel.

Owen B. Rhoads, F. Hastings Griffin, Jr., Philadelphia, Pa., for defendant.

CLARY, Chief Judge.

This case is presently before the Court for disposition of plaintiff's motion for new trial (Docket Paper No. 178). Also before the Court are motions for directed verdict made by both parties at trial (Docket Papers Nos. 170, 172 and 175) on which decision was reserved. These latter motions are hereby denied.

A recitation of the facts of this case is unnecessary since they are set out in Berguido v. Eastern Air Lines, Incorporated, 3 Cir., 317 F.2d 628, cert. den. 375 U.S. 895, 84 S.Ct. 170, 11 L.Ed.2d 124 (1963), in which the Third Circuit ordered a new trial on the ground that the trial Court committed prejudicial error in admitting certain evidence. In her motion for new trial (Docket Paper No. 178), plaintiff sets forth 22 reasons for granting the motion. However, in her brief and oral argument in support of said motion, the plaintiff has pressed only a few, which can best be categorized as follows: (1) The verdict was contrary to the clear weight of the evidence, (2) the Court erred in admitting and excluding certain evidence, and (3) counsel for defendant committed fundamental reversible error in his closing argument to the jury in that he (a) repeatedly misstated the law concerning plaintiff's burden of proof when relying on circumstantial evidence to prove its case, and argued possibilities unsupported by any evidence and received a Charge that tended to support this argument, and (b) argued that plaintiff, by virtue of her unchanged financial circumstances, did not need the award. These contentions will be dealt with seriatum.

First, the contention that the verdict was contrary to the clear weight of the evidence is without merit. The law under which this case was tried is clearly set out in Berguido v. Eastern Air Lines, Incorporated, supra, 317 F.2d at page 629. The case was exhaustively prepared and hotly contested. The trial consumed many days of testimony, consisting of highly technical circumstantial evidence, buttressed by the testimony of expert witnesses. This latter testimony was the keystone of plaintiff's case, and the credibility of these expert witnesses was vital to plaintiff's case.

The credibility of witnesses is for the jury to decide, Fabrizi v. Griffin, D.C., 162 F.Supp. 276, 277, aff'd. per curiam 261 F.2d 594 (3 Cir. 1958), and it is free to accept or reject all or any part of the testimony produced, even if the testimony is uncontradicted, Karcesky v. Laria, 382 Pa. 227, 234, 114 A.2d 150 (1955). This Court will not substitute its judgment for that of the jury's on this issue and, therefore, will not grant the motion for new trial on this ground.

Secondly, plaintiff contends that the Court erred in admitting and excluding certain evidence, viz., (a) in admitting the testimony of a defense witness relative to crane with a boom used to test the Instrument Landing System (hereafter referred to as I.L.S.) which was used by the plane in question on the night of the accident, and (b) in excluding plaintiff's exhibit 14, and (c) in excluding the testimony of one Captain LaVake offered in rebuttal by plaintiff. These contentions will be dealt with in the order stated.

In admitting, over plaintiff's objections, the testimony relative to the crane experiment, this Court was of the opinion that a proper foundation had been laid, and that the conditions surrounding the test were substantially similar to the conditions which existed on the night of the accident. The Court, after reviewing the testimony, now finds it was in error as to the latter point, and further that the admission of this evidence was so highly prejudicial to the plaintiff that refusing to grant a new trial would be inconsistent with substantial justice, (F.R. Civ.P. 61).

F. B. Brady, an I.L.S. expert, testified that disturbances in the I.L.S. glide slope beam could be caused by any obstacle in between the transmitter and the approaching aircraft, that these disturbances differed, depending on whether the obstacle was in motion or at rest, and that the effect produced would vary, depending on several factors (N.T. 765, 766, 767).

Captain Watson, an expert pilot, testified concerning the conditions existing at the time of the test, as well as the results of it. (N.T. 805, 806, 807, 832, 833). This testimony was inadmissible in that there is no evidence as to location of the truck present on the night of the accident (N.T. 681, 682, 686) in relation to the glide slope, and further the only evidence that the crane used in the test approximated the truck dimensions in the particulars mentioned by Mr. Brady in determining the effect on the glide slope, was from Captain Watson, who was not qualified as an expert in this field and not competent to testify on this point.

As shown by the above summary, the conditions existing at the time of the test, as opposed to the conditions existing at the time of the accident, were so dissimilar as to preclude a logical relevant inference, Hopkins v. E. I. Du Pont De Nemours & Co., 199 F.2d 930, 934 (3 Cir. 1952), and so different that the testimony should have been excluded, Snowiss v. Insurance Co. of Newark, 322 Pa. 161, 164, 185 A. 260 (1936).

Finally and significantly, Captain Watson's testimony concerning the result of the test, viz., a sixty-foot deviation below the glide slope (N.T. 805, 806, 807) now clearly appears to be pure hearsay in that although he flew the aircraft in the test and followed his I.L.S. indicator on a descending path, the actual observation of the distance of this descent, as well as any calculations which were involved in reaching this figure, were not made by him but by other observers in the aircraft (N.T. 806, 868, 869).

The full impact of the prejudicial nature of this error is shown by the fact that counsel for defendant, in his argument to the jury, used this testimony as well as the above-mentioned figure to suggest that the truck caused a deviation in the I.L.S. beam which, in turn, might have been a cause of the accident (N.T. 1084, 1085). In doing so, he also stated that according to Mr. Brady's testimony, it made no difference whether the crane was up or down (N.T. 1085). This is

not supported by Mr. Brady's testimony; if anything, the opposite is true.

Next we come to the plaintiff's contention that the Court erred in excluding plaintiff's exhibit 14, a letter from the Director of Communications of Eastern Air Lines (an Eastern employee) to the Civil Aeronautics Administration. It was excluded at trial due to the name of the addressee, the Court being of the opinion that this brought it within 49 U.S.C.A. § 1441(e), which prohibits the use of certain Civil Aeronautics Board reports as .evidence. The Court stated that it was otherwise admissible (N.T. 522).

After a review of the testimony and a re-examination of plaintiff's exhibit 14, and the law applicable thereto, the Court is now of the opinion that it was not rendered inadmissible by virtue of 49 U.S.C.A. § 1441(e), for the reasons that it was not a report of the Civil Aeronautics Board, and further that it was not an opinion or conclusion as to the ultimate, or even a probable, cause of the accident. This conclusion is buttressed by the following excerpt from Berguido v. Eastern Air Lines, Incorporated, supra, 317 F.2d at pages 631, 632:

> ' "The fundamental policy underlying 1441(e) appears to be a compromise between the interests of those who would adopt a policy of absolute. privilege in order to secure full and frank disclosure as to the probable cause and thus help prevent future accidents and the countervailing policy of making available all accident information to litigants in a civil suit. *Accordingly, the primary thrust of the provision is to exclude CAB reports which express agency views as to the probable cause of the accident.* Of necessity, the opinion testimony of the CAB's investigators would also come within this rule. However, the testimony of Searle as to the calculations· made by Schmidt certainly does not come within the ambit of the privilege. *His was not evaluation or opinion testimony, for it reflects in no way the CAB's findings as to the probable cause of the crash."* (Footnotes omitted; emphasis supplied).

To the same effect see Tansey v. Transcontinental & · Western Air, Inc., 97 F. Supp. 458, 461 (D.C.D.C.1950). And see the discussion in Yanick v. Pennsylvania Railroad Company, 192 F.Supp. 373 (E. D.N.Y.1961).

■ Notwithstanding the above conclusion, the Court is of the opinion, contrary to its opinion stated at trial (N.T., 522), that this exhibit was properly excluded in that it was not properly authenticated, the opinion expressed therein is clearly hearsay, and it was not established that the signer was the author, and even if he was the author, whether he was such an agent whose statements could bind his corporate principal, viz., the defendant.

Finally, and probably most importantly, the exhibit on its face shows it is irrelevant in that it only purports to state that certain equipment used to test the aircraft in question on the morning prior to the accident was in proper working order, which is not relevant to this case and would only tend to mislead the jury. For these reasons, there was no error in excluding plaintiff's exhibit 14.

Lastly, we come to plaintiff's contention that the Court erred in excluding testimony of Captain LaVake, given at a prior trial of this case, offered in vital rebuttal. The question of the admissibility of this evidence arose at two points in the trial, both of which must be discussed to understand the significance of the challenged ruling. In the first instance, plaintiff sought to use it to impeach Captain Watson's testimony regarding the weather conditions prevailing at the airport on the night of the accident. It was excluded as being out of order in that, at that point, defendant was putting on its case (N.T. 850–852). The Court left open the question as to its admissibility

at some later point in the trial (N.T. 851). This ruling was correct and is not challenged here.

■ The ruling about which plaintiff complains was made in the following context. The testimony was offered first, to rebut Captain Watson's testimony both as to weather and to his understanding of the term "take-a-look" and secondly, to rebut Mr. Brady's testimony concerning the latter point (N.T. 895, 896). The Court, at the time, was under the impression that Captain Watson had testified that the airport would not necessarily close down due to the weather (N.T. 902, 903) and was not contrary to Captain LaVake's testimony that the airport could possibly close down (N.T. 906a) and, therefore, it was not rebuttal evidence, and it was excluded on this ground and not on the ground of inadmissibility (N. T. 903, 904). Having reviewed the record on this point, this Court now finds that Captain Watson definitely stated that the weather was not getting to the point to where the airport would be closed down (N.T. 849), in direct opposition to Captain LaVake's prior testimony (N.T. 906a) and, therefore, the Court erred in finding that the proffered testimony was not proper rebuttal. This error is emphasized by the fact that the defendant, at the time of the discussion, agreed with the Court that if Captain Watson had testified, as we now know he did, that Captain LaVake's testimony would clearly be rebuttal (N.T. 900). The condition of the weather on the night of the accident was a material issue in this case, contrary to defendant's contention that it was a collateral issue, and the Court now is of the opinion that it committed highly prejudicial error in excluding this testimony.

■ As to the testimony of Captain Watson concerning "take-a-look", the Court, at the trial, was of the opinion that his testimony had been nullified by cross-examination, and, in fact, the Court thought he had withdrawn his statement on this matter (N.T. 896). It was on this basis that the Court excluded Captain LaVake's testimony and which lead the Court to overlook completely Mr. Brady's testimony on this point (N.T. 904). On reviewing the record of the trial, the Court now finds that Captain Watson's testimony concerning "take-a-look" began with a statement which he volunteered, and not in response to a question put to him by plaintiff and to which plaintiff objected (N.T. 847, 848). The substance and effect of his second statement was that his only interpretation of "take-a-look" was as it was used in certain air regulations, inferring thereby that it was a legal maneuver (N.T. 853).

In reviewing Mr. Brady's testimony on this subject, it appears that initially he claimed he was ignorant as to the meaning of "take-a-look" or "sneak-in" in the airline's business (N.T. 784). He then, two questions later, described "take-a-look" as being a bona fide operation and distinguished it from his understanding of a "sneak-in" approach (N.T. 784). Captain LaVake's testimony, however, clearly showed that his understanding of "take-a-look" was that it was an illegal procedure (N.T. 904, 905). The Court erred in excluding this evidence since it was clearly rebuttal on a crucial issue in the case. Defendant contends that this evidence could not be used to rebut Mr. Brady's testimony since Mr. Brady was an I.L.S. expert, whereas Captain LaVake was called as a pilot. The Court finds this contention without merit. The Court merely points out that the defendant, during its closing argument, made no such distinction as it now attempts to make when, in rebutting the testimony of Captain Kepner, an expert pilot called by plaintiff, it used Mr. Brady's statements as to his never having heard of "sneak-in" in commercial aviation (N.T. 1073).

For the above reasons, the Court finds, it committed error in excluding Captain LaVake's prior testimony, both as to weather and "take-a-look". The Court, further finds that this error was so high-

ly prejudicial that refusing to grant a new trial on this ground would be inconsistent with substantial justice. The significance of this error is highlighted by the fact that this testimony was previously excluded as not being timely (N.T. 850–852), and then when it was timely, it was excluded due to the Court's misapprehension of the testimony which plaintiff was seeking to rebut. This latter exclusion, the Court finds, was clearly erroneous. As to the use of prior testimony for rebuttal, see Nestor v. George, 354 Pa. 19, 22–24, 46 A.2d 469 (1946) and Wolf v. United Air Lines, Inc., 12 F.R.D. 1, 3 (M.D.Pa.1951) for the general rule on admissibility of testimony given at a prior trial.

The final category of reasons advanced by plaintiff in support of her motion for new trial relates to certain statements made by defendant in its closing argument to the jury, which are claimed to be so prejudicial as to constitute reversible error.

 At the outset, we are met with defendant's contention that these issues cannot be raised at this time because plaintiff at trial failed to object, move for the withdrawal of a juror, or request an additional instruction, and that plaintiff's counsel arose to object is untrue (Defendant's Brief, page 6). As to the last point, this Court distinctly recalls waving plaintiff's counsel to his seat when he arose to object to certain comments made during defendant's closing argument. The reason for this procedure is that the Court has always felt great latitude should be allowed in summations, and further that each side should be permitted to argue its case without interminable interruptions from opposing counsel. As to the other failures attributed to plaintiff's counsel, they are incorrect in this regard that plaintiff did request an additional charge as to burden of proof (N.T. 1146), as well as an objection to certain statements regarding the opinion of the Civil Aeronautics Board as to cause of the accident (N.T. 1084),

which was elucidated at side bar following the Charge of the Court (N.T. 1151). This Court, at that time, stated that both arguments were in the record and objections to them were to be raised by post trial motions (N.T. 1151). For the above reasons, the Court finds that the points raised by plaintiff are properly before it.

The contentions of plaintiff under this category are that defendant committed fundamental reversible error in its closing argument to the jury in that it repeatedly misstated the law concerning plaintiff's burden of proof when relying on circumstantial evidence to prove its case; argued possible causes of the accident which were unsupported by the evidence; and made a patently prejudicial reference to plaintiff's unchanged financial status.

 The defendant, at the outset of its closing argument, discussed plaintiff's burden of proof in this case (N.T. 1054), just as plaintiff had done in her argument (N.T. 958 et seq.). Such argument is undoubtedly permissible when done in a proper manner. Closing argument is the most potent tool available to an advocate in that, after all the evidence has been presented, he is permitted to marshal his evidence and argue the logical relevant inferences deducible therefrom, as well as to discuss the law applicable to the facts proven. Being such a potent device, dire consequences attend any misuse of it. It is expected that an advocate will stress the evidence most favorable to his position and argue the strongest inferences deducible from it, and discuss the law applicable thereto, using expressions most favorable to his position, which he can glean from either statutes or cases. When, however, these bounds of permissible argument are transgressed by (1) repeatedly misstating the law, or (2) arguing facts and inferences which are without any evidentiary basis, or (3) making irrelevant, highly prejudicial remarks concerning a litigant, grave problems arise. Such is

the situation here in that all of the last mentioned items are present, as is shown by the following excerpts from defendant's argument:

"Yes, circumstantial evidence can prove a plaintiff's case, but to prove it, it must be adequate to establish what the plaintiff claims and to exclude all other reasonable bases, and I submit to you the plaintiff hasn't done that here." (N.T. 1054)

"So you have three problems on the evidence here, to analyze it carefully under your oaths as jurors and to see whether there should be a verdict for the defendant, because the evidence shows the defendant didn't contribute or did everything possible that it could, or whether it is an unexplained accident, in which case your verdict would be for plaintiff for $8300, or whether this crew conspired and dared to take these human lives, this crew who had families too and who knew that they had 12 passengers on board." (N.T. 1057)

"Did this crew deliberately dare to take life and gamble with life or did something else happen, one of these other possibilities, which would make this an unexplained accident." (N.T. 1058)

"Do you think that the weather would have caused these pilots to dare to take human lives or to gamble with it or to conspire with themselves? That is what plaintiff is asking you to believe." (N.T. 1066)

"I don't know whether jets were there, but I think on the evidence here it is reasonable to believe that they may have been and that that may have been a cause of the accident.

"I submit that plaintiff hasn't eliminated it and the plaintiff must meet the burden of showing a conspiracy

of this crew to take these lives." (N.T. 1078)

"We do know that there was a truck driven by Wheeler with some 10 to 15 tons of aluminum extrusions on it on that highway that night. Whether that caused it I don't know, but it is a possibility. If you have any doubt now and think that is a possibility among these others then you cannot find for plaintiff in this case.

"Now, members of the jury, I submit to you that the probable, credible, likely thing here was not these men, a conspiracy of this crew wanting to get in to avoid being fined or set down by a Federal Aviation man who was there that night, or to save Eastern from adverse public relations." (N.T. 1085)

The first statement set out above is clearly a misstatement of the law as counsel for defendant was well aware of at the time, since it was he who called the Court's attention to the case of Smith v. Bell Telephone Co., 397 Pa. 134, 153 A.2d 477 (1959) at a meeting in chambers prior to the argument (N.T. 936, 937). In the Smith case, the very rule which counsel for defendant argued to the jury was expressly disapproved and the correct rule stated at pages 137 and 138 of 397 Pa., at page 479 of 153 A.2d, as follows:

"The formula that 'the circumstances must be so strong as to preclude the possibility of injury in any other way and provide as the only reasonable inference the conclusion plaintiff advances' is not a correct statement of the rule to be applied by the judge on deciding a motion for either a nonsuit or binding instructions. If that were the rule what would be the province of the jury? In no case where there was more than one reasonable inference would the jury be permitted to decide. Insofar as this rule is stated in our cases it is disapproved.

"We have said many times that the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based. Schofield v. King, 1957, 388 Pa. 132, 136, 130 A.2d 93; Connor v. Hawk, 1957, 387 Pa. 480, 482, 128 A.2d 566; Ebersole v. Beistline, 1951, 368 Pa. 12, 16, 82 A.2d 11. Clearly this does not mean that the jury may not draw inferences based upon all the evidence and the jurors' own knowledge and experiences, for that is, of course, the very heart of the jury's function. It means only that the evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the *only* one which logically can be reached.

"It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability." (Footnote omitted; emphasis by the Court).

In concluding, the Court stated at page 139 of 397 Pa., at page 480 of 153 A.2d:

"Therefore, when a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deducible therefrom, such evidence, in order to prevail, must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the fact-finder any other evidence and reasonable inferences therefrom which are inconsistent therewith. This rule has been applied in substance in many cases. See Miller

v. Hickey, 368 Pa. 317, 81 A.2d 910; Rockey v. Ernest, 367 Pa. 538, 541, 80 A.2d 783; Turek v. Pennsylvania R. R. Co., 361 Pa. 512, 64 A.2d 779; Randolph v. Campbell, 360 Pa. 453, 62 A.2d 60."

In Lear v. Shirk's Motor Express Corp., 397 Pa. 144, 152 A.2d 883 (1959), the Court followed the rule in the Smith case, supra, and stated that the "only reasonable inference" test had a place in negligence cases as follows, at page 151 of 397 Pa., at page 887 of 152 A.2d:

"The 'only reasonable inference' test does have proper application in negligence cases. Although plaintiff may be declared contributorily negligent as a matter of law this may not be done simply because, in the opinion of the Trial Judge, the inference of his own negligence 'outweighs' the evidence or presumption of due care. It may be done only where the 'only reasonable inference' of the evidence *in plaintiff's own case* shows want of due care. Similarly, the negligence of defendant may be declared as a matter of law but only where the 'only reasonable inference' of *defendant's own evidence* shows his negligence. This is so in both those instances because although the evidence is oral there is no question of credibility presented." (Emphasis by the Court).

The Court also stated at page 152 of 397 Pa., at page 887 of 152 A.2d:

"A plaintiff is entitled to have his case considered by the jury even though he does not show that the only reasonable inference is that defendant's negligence was the proximate cause of the accident. It is enough that he produces evidence which may properly be found by the jury to justify an inference that the defendant's negligence was the proximate cause of the accident because such evidence outweighs even though it does not *exclude* an inference that the defendant was not

negligent or that his negligence was not the proximate cause of the accident." (Emphasis by the Court).

In Shearer v. Ins. Co. of No. America, 397 Pa. 566, 156 A.2d 182 (1959), the Court followed the Smith and Lear cases, supra, and stated the following at page 570 of 397 Pa., at page 184 of 156 A.2d:

"In spite of the definitive and objective evidence supporting the proposition that the wreckage in the plaintiffs' house was due to below-surface blasting, the defendant argues that the plaintiffs may not recover unless they can exclude any other possible explanation for the calamitous event of November 16th. In this respect the appellant cites the case of DeReeder v. Travelers Insurance Company, 329 Pa. 328, 198 A. 45, where Chief Justice Maxey equated the required plaintiff's proof with the proof required to support the Commonwealth's contention in a criminal case. These standards, however, are not similar. In fact, they are quite dissimilar. In a criminal prosecution the Commonwealth must establish its theorem beyond a reasonable doubt. In a civil case the plaintiff is required only to produce such quality and quantum of evidence as will preponderate, in weight and credibility, over that adduced in behalf of the defendant."

See also Duckworth v. Ford Motor Company, 211 F.Supp. 888, 892 (E.D.Pa.) modified on other grounds, 320 F.2d 130 (3 Cir.1963); Bocchicchio v. Curtis Publishing Co., 203 F.Supp. 403, 410 (E.D.Pa.1962).

The evidence adduced at trial by plaintiff was highly technical and the question of whether or not the pilot was guilty of wilful misconduct was close, and the argument as set out above may have been the determining factor in the jury finding as it did. Neither this Court, nor anyone else, will ever know the extent to which this argument affected the jury's deliberations. However, the Court is of the opinion that in the interests of substantial justice, this plaintiff is entitled to have a new trial and verdict truly rendered and unaffected by any prejudicial matter as was present in this trial.

Defendant's contention that the Smith case, supra, merely stated a rule to be applied by trial Judges in determining whether or not a case is to be submitted to a jury, is without merit in light of Coleman v. Denio, 411 Pa. 148, 149, 191 A.2d 270 (1963), in which the Court, in a per curiam decision, stated at page 149 of 411 Pa., at page 271 of 191 A.2d:

"The appellants argue also that the Trial Court erred in affirming the plaintiff's fifth point for charge which stated in effect that the jury's conclusion did not need to be the only one possible under the facts. This question was definitively decided by this Court in Smith v. Bell Telephone Co. of Pennsylvania, 397 Pa. 134, 153 A.2d 477, and the Trial Court acted properly in the matter."

Defendant's contention that the jury must take the law from the Court and not from counsel is true in the normal case. Here, however, these prejudicial statements by counsel were so pervasive that they served to nullify the entire trial. Robinson v. Pennsylvania R. Co., 214 F.2d 798 (3 Cir.1954). Further, the Court finds that it erred in failing to grant plaintiff's request for a further elucidation of the burden of proof (N.T. 1146).

The Court is compelled to grant a new trial in the interests of substantial justice. In Lind v. Schenley Industries, Inc., 278 F.2d 79, cert. den. 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960), the Court states the rule concerning new trials and the following language at page 90 of 278 F.2d clearly fits this case:

"New trials granted because (1) a jury verdict is against the weight

of the evidence may be sharply distinguished from (2) *new trials ordered for other reasons: for example, evidence improperly admitted, prejudicial statements by counsel, an improper charge to the jury or newly discovered evidence.* In the first instance given it is the jury itself which fails properly to perform the functions confided to it by law. *In the latter instances something occurred in the course of the trial which resulted or which may have resulted in the jury receiving a distorted, incorrect, or an incomplete view of the operative facts, or some undesirable element obtruded itself into the proceedings creating a condition whereby the giving of a just verdict was rendered difficult or impossible.* In the latter instances, (2), supra, the trial court delivered the jury from a possibly erroneous verdict arising from circumstances over which the jury had no control. *Under these conditions there is no usurpation by the court of the prime function of the jury as the trier of the facts and the trial judge necessarily must be allowed wide discretion in granting or refusing a new trial."* (Emphasis supplied).

■■■ Plaintiff's contention as to defendant's arguing to the jury facts and inferences as possible causes of the accident which were without an evidentiary basis, viz., the illness of the crew, defects in the I.L.S. system, and mechanical failures in the aircraft, is meritorious in part. As to the jets and illness of the crew, there is sufficient evidence which, if believed, could lead to the inference that they were causes of the accident, although in regard to the illness of the crew, it is highly tenuous. The argument concerning the possible mechanical failure of the aircraft was certainly without an evidentiary basis, in that all evidence concerning the plane was to the effect that it was functioning well when it left Miami, and up to the time of the crash, none of its crew reported any malfunctions, and subsequent to the accident the parts which could be tested were found to be in good working order. This evidence was uncontradicted and there was no evidence on which to argue mechanical failure. The fact that the jury might be aware how fast mechanical failure can develop, and the fact that another pilot on the same night had trouble with his plane (N.T. 1079, 1080), could not support an inference that the aircraft in question suffered a mechanical failure which was the cause of the accident.

■■■ The argument concerning a malfunction in the I.L.S. as a possible cause of the accident was that (1) Mr. Brady's uncontradicted testimony was that there could be deviations in the glide slope caused by trucks, (2) the crane with boom simulating a truck test resulted in a defection, and (3) there was a truck nearby at the time of the accident (N.T. 1083, 1085). Since the testimony concerning the crane and boom test was erroneously admitted, it should not have been argued to the jury. But, in any event, there was no evidence as to the location of the truck relative to the glide slope and, therefore, its presence could not be used to show that it caused a deflection in the I.L.S. which may have caused the accident, and it was prejudicial to do so.

■■■ The most highly prejudicial factor on this facet of the argument is that, at this point, defendant's counsel injected the idea that the Civil Aeronautics Board considered that a deviation in the I.L.S. might have been a cause of the accident . (N.T. 1084), whereas throughout the trial this same counsel repeatedly objected, which objections, in great measure, were sustained, to the use in evidence of any part of any report which in any way reflected an opinion by the Civil Aeronautics Board as to the cause of the accident. The cases cited and discussed

in connection with the admissibility of plaintiff's exhibit 14 are relevant here and clearly show that such opinions are inadmissible and a fortiori they are not proper in a final argument. This was so prejudicial to plaintiff's case that it, in and of itself, is ground for a new trial. Hockaday v. Red Line, Inc., 85 U.S.App. D.C. 1, 174 F.2d 154, at page 156, 9 A.L.R.2d 601 (1949).

 It may also be that the Court gave some credence to the above arguments in its Charge (N.T. 1131), which, in effect, compounded the error and also requires the granting of a new trial. O'Neill v. Reading Company, 306 F.2d 204, 206 (3 Cir.1962).

 Plaintiff's final contention is that defendant's counsel committed reversible, prejudicial, and fundamental error when in his argument, he referred to the plaintiff's unchanged financial status as follows:

"Members of the jury, I think it is fair to submit to you here that this family, whose circumstances, from what you hear, haven't changed a bit, who live in a big house on Rose Lane in Haverford on the Main Line, whose daughters went to Agnes Irwin finishing school on the Main Line, went to Sweetbrier College, all but one, who went to the University of Pennsylvania, a son who went to and is still going to Haverford School, they were not dependent or expecting these sums from Mr. Berguido." (N.T. 1087)

This reference to plaintiff's financial status is clearly error of such a highly prejudicial nature that standing alone, it necessitates granting the plaintiff's motion for new trial.

 Any reference by counsel to the affluence of a litigant has always been regarded as highly prejudicial, requiring Courts to take strong remedial action, as evidenced by cases which follow.

In Trimble v. Merloe, 413 Pa. 408, 197 A.2d 457 (1964), plaintiff's counsel, in summation, told the jury that the law forbade counsel from mentioning either the sum of money plaintiff wanted or whether or not the defendant carried insurance, because it would be prejudicial and irrelevant. The Court, in affirming an order granting a new trial, stated at page 410 of 413 Pa., at page 458 of 197 A.2d:

"In this and every adversary tort proceeding, two basic issues are presented: (1) liability and (2) the damages to be awarded as compensation for the wrongful invasion of plaintiff's rights. In resolving these issues (in the absence of punitive damages), consideration of the affluence of the defendant, his ability to pay, or his liability insurance coverage is improper, irrelevant, prejudicial, and clearly beyond the legally established boundaries."

The Court also stated at page 411 of 413 Pa., at page 459 of 197 A.2d:

"This is an instance where plaintiff's counsel made a conscious and deliberate effort to build his case and verdict by seeking to distract the jury from the real issues and to induce a substantial verdict by inferences, allusions and insinuations by his insurance comments. This approach was clearly a design to make capital out of something not in the record and no part of the law suit. Insurance had not been mentioned or even suggested prior to his summation. It would indeed be naive to proceed upon the wholly unrealistic assumption that counsel's insurance argument was not made with the expectation that it would help his case."

This Court finds no distinction between a plaintiff's counsel mentioning the possibility that a defendant is insured, and a defendant's counsel referring to the affluence of a plaintiff, because the purpose of both is to inject a highly prejudicial and irrelevant issue for the jury's consideration. The fact

that plaintiff in this case may have been well provided for was and is irrelevant and any allusion to this fact was highly prejudicial.

As was stated in Lobalzo v. Varoli, 409 Pa. 15, at page 17, 185 A.2d 557, at page 558 (1962):

"A person who is injured through the fault of another is entitled to receive suitable damages from the wrongdoer regardless of payments received by the victim from sources other than the wrongdoer's pocketbook. For instance, a tortfeasor would not be heard to argue that the person he had injured received payments on an accident insurance policy and that, therefore, he (tortfeasor) should not be required to pay the injured person anything."

The insidious nature of such a comment as was made in the present case and the possible effect flowing from it was succinctly stated by the Court in Lobalzo v. Varoli, supra, 409 Pa. at page 21, 185 A.2d at page 561, as follows:

"Although it is true the jury found both plaintiff and defendants negligent, it is impossible to conjecture what influence the erroneously admitted evidence on workmen's compensation and unemployment compensation, as well as the misleading charge, had in bringing the jury to the conclusion it reached. When an error in a trial is of such consequence that, like a dash of ink in a can of milk, it cannot be strained out, the only remedy, so that justice may not ingest a tainted fare, is a new trial. The defendants' improper emphasis on the subject of an assumed double or triple payment may well have caused the jury to disbelieve the plaintiff with regard to his testimony on the manner in which the accident occurred."

One final instance of the law's continuing concern with this problem, in a slightly different context, is Jamison v. A. M. Byers Company, 330 F.2d 657 (3 Cir.1964), wherein the Court found prejudicial error was committed in the trial Court's failure to delete a liability insurance provision from a contract before the jury was permitted to have it on retiring to consider its verdict.

Defendant contends that its argument was proper in that plaintiff's counsel had argued inflated figures to the jury, which argument had to be met. The short answer to this is that the record clearly shows that both before and after this most prejudicial statement was made, counsel for defendant had very definitely and persuasively met the plaintiff's argument on this point by reference to the decedent's style of living, his net earnings, and the many deductions which would have to be made therefrom for the decedent's personal expenses (N.T. 1086–1089). The very fact that this able argument so clearly rebutted plaintiff's argument as to the facts and figures concerning decedent's income, leads this Court to the conclusion that the statement in question was made solely to appeal to the passion and prejudice of the jury, and that standing alone, the Court would be compelled to grant a new trial in the interests of justice.

In conclusion, one final citation is apropos. In DeVito v. United Air Lines, 98 F.Supp. 88, at page 105 (E.D.N.Y. 1951), the Court stated:

"I must conclude, therefore, that improper insinuations and assertions both during the course of the trial and in summation by trial counsel for Douglas were deliberately calculated to mislead the jury. The trial court has the power to set aside the jury's verdict in any case where the ends of justice so require. Brown v. Walter, 2 Cir., 1933, 62 F.2d 798; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 1941, 122 F.2d 350; London Guarantee & Accident Co. Ltd. v. Woelfle, 8 Cir., 1936, 83 F.2d 325; New York Central Rail-

road Company v. Johnson, 279 U.S. 310, 49 S.Ct. 300, 73 L.Ed. 706; Berger v. United States, 295 U.S. 78, 89, 55 S.Ct. 629, 79 L.Ed. 1314.

"This was a bitterly contested lawsuit. However, the fact that much feeling was engendered as a consequence thereof did not give license to overstep the bounds of legitimate advocacy." . (Footnote omitted).

The remaining contentions advanced by plaintiff in her motion for new trial have been thoroughly considered and are found to be without merit.

: The Court is not unmindful of the long history of this case, as well as the expense and delay which will be occasioned by the result reached here. The Court concludes, however, that in the interests of justice, the motion for new trial must be granted.