Lobalzo, Appellant, *v.* Varoli.

16

Argued October 8, 1962. Before BELL, C. J., MUS-
MANNO, JONES, EAGEN, O'BRIEN and KEIM, JJ.

*Charles F. Dean,* with him *Paul C. Ruffennach,* for
appellant.

*Robert E. Wayman,* with him Dickie, *McCamey,
Chilcote & Robinson,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, November 13,
1962:

Joseph Lobalzo, an employee of the United Parcel
Service, was injured when a truck which he was op-
erating for his employer, collided with a truck owned
by the defendants August Varoli and Raymond F.
Varoli. The plaintiff brought suit against the Varolis,
charging their driver-employee with negligence. The
jury returned a verdict in favor of the defendants, stat-
ing that the drivers of both vehicles were negligent.

At the trial the defendants brought to the jury's at-
tention the fact that Lobalzo, as an employee of the
United Parcel Service, had received workmen's com-
pensation during the time he was disabled as a result
of the truck collision. The defendants also informed
the jury that the plaintiff had collected unemployment
compensation. The plaintiff complains, inter alia, that
he is entitled to a new trial because the interjection
by the defendants into the trial of workmen's and un-

employment compensation prejudiced his case in the eyes of the jury in that they were led to believe that he was endeavoring to obtain double or triple payment for one injury.

A person who is injured through the fault of another is entitled to receive suitable damages from the wrongdoer regardless of payments received by the victim from sources other than the wrongdoer's pocketbook. For instance, a tortfeasor would not be heard to argue that the person he had injured received payments on an accident insurance policy and that, therefore, he (the tortfeasor) should not be required to pay the injured person anything. In the case of *Moidel v. Peoples Natural Gas Co.,* 397 Pa. 212, the plaintiffs brought suit against a gas company for the destruction of their building as the result of a gas explosion. At the trial the defendant introduced evidence that the plaintiffs had received a certain sum of money as an insurance settlement for the loss of the building. Even though the plaintiffs had not objected to the introduction of this evidence, this Court held that the reference to the insurance settlement had so prejudiced their case that when the jury returned a verdict for the defendant, the plaintiffs were entitled to a new trial. Justice JONES, speaking for this Court, said: "Clearly, the fact that an injured party has received compensation from a source other than the wrongdoer is without relevancy in a suit brought by the injured party against the wrongdoer to recover damages."

The fact that an employed workman, injured through the fault of a third person, is required to pay back, from any verdict received from the third person, the amount of workmen's compensation paid to him, is not a matter for discussion before the jury in the trial based on the accident.

In *Lengle v. North Lebanon Township,* 274 Pa. 51, this Court said: "There was admitted in evidence a

compensation agreement under which deceased's children received compensation. Not only was the fact of an agreement admitted, but much testimony was taken showing the amount of money received under it. The offer was for the purpose of showing plaintiff could not maintain the action in right of the children. *The real purpose (not part of the offer) was to convey to the jury the fact that the children were already being taken care of under the compensation laws of the State, and the amount received by them. No further suggestion was necessary to convince the jury the township should not be asked to pay more to the children or any sum in relief of the employer.* Under such circumstances plaintiff's chance of recovering anything was materially injured the moment the evidence was delivered. The Court endeavored to correct its mistake in its charge, but the mischief was already done. Corrective instructions had little chance to get this idea out of the jurors' minds." (Emphasis supplied.)

In the case at bar, defendants' counsel openly announced in the presence of the jury: "If the court please, I have a statement here which we have subpoenaed from Liberty Mutual Insurance Company, the insurance carrier for United Parcel Service and the company that had the workmen's compensation on the employer of Mr. Lobalzo."

Later, in an argument with plaintiff's counsel, defendants' counsel said: "I will be very happy, Mr. Dean [plaintiff's counsel], to tell this jury the amount of compensation, medical payments and everything else, as well as this: that they don't care whether they get it back or not."

The offer to tell the jury the amount of the compensation was improper and the statement by defendants' counsel that the insurance company didn't care whether it got it back compounded the impropriety. The trial court did nothing to correct this error; in

fact, it contributed to the contretemps by saying to the jury: "Now there are some other elements, members of the jury, I should comment upon. There has been offered in evidence an exhibit showing that the plaintiff had received a certain sum of money from the Liberty Mutual Insurance Company as workmen's compensation, and a question has come up as to whether any of this sum of money must be paid back by Mr. Lobalzo, the plaintiff. I think the insurance carrier under workmen's compensation is not entitled to recover this sum of money directly from Mr. Lobalzo, the plaintiff. They can, however, recover this amount if they are entitled to it from any third party."

The court allowed the jury to believe that the insurance company which paid the workmen's compensation could not recover from Lobalzo what they had paid him. This statement, of course, was reversible error and of such a basic character that even if unobjected to entitled the plaintiff to a new trial.

The statement of the court was also erroneous in that, like the utterances of the Delphic oracle, it was so phrased that the jury could interpret it in whatever way suited their fancy for the moment. Where the jury is being instructed on the law, the language must be imperative. A jury has no latitude of interpretation in the realm of the law. It, of course, has plenary authority to weigh the value of controverted facts (*that* indeed is its primary function) and to determine on the scale of credibility what witnesses are to be believed and not believed. But where legal principles are involved they have no discretion whatever. They must obey the judge as a ship's crew must obey their captain, as building workers must follow the blueprints of the architect; as nurses must carry through what is told them by the surgeon, and as pupils must faithfully hearken to their teacher. But in order to demonstrate *that* loyalty and put into effect the instructions they

receive, the subordinates must know what the instructions are and what they mean. A ship's captain who shrouds his orders in ambiguity or indecisiveness takes the chance of having his ship run onto the rocks of disaster. Instructions to the jury which suggest doubt in the mind of the judge as to what the law is can only introduce into the jury box confusion where there should be certainty, indefiniteness where there must be sureness. Law at its best is a maze of complexities to the average layman. Jurors, therefore, are not to be asked to find their own way through the jurisprudential webwork. They must have a surefooted guide, and that guide must be the judge.[1] [2]

It is not necessary here to indicate what should be a proper charge on an insurance carrier's right to subrogation for the reason that the subject of subrogation was irrelevant in the case and the matter of workmen's compensation should not have been raised as an issue.

The defendants argue, and the lower court accepted as meritorious the argument, that they were merely seeking to show that the plaintiff had made a statement to the insurance company carrier which was inconsistent with his court testimony. But this alleged inconsistency could have been shown without erecting in the path of a just decision the fact of payments of workmen's compensation which, presented as it was here, could not help but represent the plaintiff as seeking to be paid twice for one loss.

The defendants committed the same error here recounted, on the subject of unemployment compensation. In cross-examining the plaintiff, defendants'.

---

[1] In *O'Toole v. Braddock Borough*, 397 Pa. 562, this Court said: "Even assuming the unlikely hypothesis that a jury could fortuitously be composed of persons sufficiently grounded in law to engage in the creation of jurisprudence, they still would have no authority under the constitution to do so."

[2] *Sears v. Birbeck*, 321 Pa. 375.

counsel said: "You tell the Department of Unemployment Compensation you're able, willing and ready to work so you can get your unemployment compensation; then you come into court here, pursuing money, and you tell this jury you weren't able to work,—what I want to know is which story is correct."

The plaintiff did not claim he had been totally disabled as a result of the injury sustained in the truck accident. Thus, it was improper for defendants' counsel to suggest to the jury that by receiving unemployment compensation, after the plaintiff had been laid off on account of lack of work, he was endeavoring to obtain additional payment for the injuries inflicted as a result of the defendants' alleged negligence.

Although it is true the jury found both plaintiff and defendants negligent, it is impossible to conjecture what influence the erroneously admitted evidence on workmen's compensation and unemployment compensation, as well as the misleading charge, had in bringing the jury to the conclusion it reached. When an error in a trial is of such consequence that, like a dash of ink in a can of milk, it cannot be strained out, the only remedy, so that justice may not ingest a tainted fare, is a new trial. The defendants' improper emphasis on the subject of an assumed double or triple payment may well have caused the jury to disbelieve the plaintiff with regard to his testimony on the manner in which the accident occurred.

Since the case goes back for a new trial it may be in order to mention another item of which the plaintiff complains. The record reveals that throughout the trial the attorney for the defendant, who enjoys the boon of youth, taunted plaintiff's counsel, accusing him of insincerity and occasionally treating him with disrespect. At one point in the trial he said: "If the Court please, Mr. Dean has copies of all these doctors' reports. If he wants to be fair and just, he should let the jury see the doctors' reports too in this case."

There was no indication that plaintiff's counsel was not being "fair and just" in the matter. Attorneys, of course, should not be restricted in the fullest partisan and ardent presentation of their respective causes, but a constant fusillade of belittling remarks by young counsel against older counsel is not commendable as a demonstration of fidelity to one's clients. In one instance, defendants' counsel treated with sarcasm the fact that plaintiff's counsel had been a practicing lawyer for over a quarter of a century. "Thank you, Mr. Dean, for your advice. But, I think, if you have no objection, you have been in this court for twenty-five years or longer and you've used the same tactics."

The lawyer who sees the sun of life slowly but surely traveling toward the west can find a glow of gratification in the realization that he enjoys the respect of the Bench and Bar for the manner in which he has conducted himself in his professional life. If that respect is not forthcoming, it throws a shadow of disappointment where there is already the shadow of sadness in the realization that youth is gone. There is nothing in the record to suggest justification for defendants' counsel's taunting of plaintiff's counsel. Defendants' counsel may not have intended any disrespect to his adversary as the record seems to indicate, and he will have an opportunity at the next trial to show that he did not so intend.

Judgment reversed with a venire facias de novo.