## Feld v. The Greyhound Corporation

*S. Regen Ginsburg*, for plaintiff.

*Richard E. McDevitt*, for defendant.

BARBIERI, J. and SPAETH, J., January 31, 1967.—In this trespass case, plaintiff, Ruth Feld, claims damages for accidental injuries suffered by her on September 14, 1959, on North Broad Street in the City of Philadelphia. A collision between her automobile, which she was operating, and a Greyhound bus occurred when her automobile swerved from a southbound lane into the path of a Greyhound bus, which was proceeding in one of the northbound lanes. Her swerve to the left into the northbound traffic lanes was carried out by her in order to avoid an automobile which came at her from her right.

The trial before Barbieri, J., and a jury was carried out over a period of seven days and resulted in a verdict for defendant. Plaintiff moved for a new trial, and, after arguments before Barbieri and Spaeth, JJ., on February 9, 1966, the motion was denied. Plaintiff filed a petition for reargument of her motion for a new trial to which defendant filed an answer. This petition was denied on April 26, 1966.

The case involves contradictory evidence on two major negligence issues: (1) Whether or not there was such explanation by plaintiff of her position in the northbound lanes which the jury could accept in order to free her from the inference of contributory negligence created by her presence there, and (2) whether or not there was any negligence on the part of the Greyhound bus driver in connection with the impact of his bus with plaintiff's automobile. We have concluded that there was sufficient exculpatory testimony, or, in any event, that the evidence permitted the drawing of inferences sufficiently favorable to plaintiff, to justify presenting the first of these issues to the jury, and that there was also, in at least one phase

of the testimony, the basis for raising inferences that there was negligence on the part of the bus driver in that he could have stopped or otherwise maneuvered his bus to avoid the impact. There was very strong testimony which, if accepted by the jury, would clear defendant of negligence, and there was equally strong testimony which the jury could have accepted to convict plaintiff of contributory negligence.

We will not review in detail the testimony of all of the witnesses, because we are satisfied that there is no merit in any of the contentions for new trial advanced by plaintiff, and that the only contention which we considered worthy of careful consideration was one having to do with the use of a certain "demand for arbitration" which furnished the basis for some cross-examination of plaintiff during the trial. In discussing this one question, we do not wish to be taken as suggesting that we have not considered with great care all of the other points raised by plaintiff and her arguments advanced in support thereof. We do wish to assert, however, that we deem them to be of such de minimis significance, and so lacking in merit, that extended discussion of them would serve no useful purpose. In the course of discussing the one point concerning the alleged prejudice from examination of plaintiff as to the arbitration matter, we will develop those phases of the testimony which are relevant to this point, and we are confident that this will serve to present satisfactorily the basic elements of the vital testimony in the case.

The jury was charged that plaintiff's entry into the northbound lane would be negligent conduct on her part unless some exculpatory explanation was offered. Under the circumstances in this case, this instruction was proper. See Benner v. Weaver, 394 Pa. 503 (1959).

Plaintiff's explanation of her actions in connection with the presence of her automobile in the northbound lanes was that, as she proceeded south on Broad Street, and through the intersection with York Street, while passing a gasoline station on the southwest corner to her right, "a car pulled out and sort of came towards me and I tried to avoid it, when I swerved to my left". She stated that this unidentified car struck her "rather hard" and that she then "sort of lost control of my car and it swung to the east", where she eventually arrived at the east curb and the contact with the Greyhound bus occurred. Her testimony is that she had arrived at a standstill before the impact took place. In connection with this testimony, she was crossexamined as to the arbitration proceedings carried out by her against her own automobile insurance carrier on the uninsured motorist coverage in her policy. In this proceeding, she claimed that the personal injuries suffered in this accident were due to the negligence of the unidentified motorist.* The first phase of this crossexamination occurred in the course of questioning by defense counsel about prior accidents suffered

---

* Her formal claim, entitled "DEMAND FOR ARBITRATION", contains the following: "CLAIM OR RELIEF SOUGHT: (amount if any) The matter in dispute is as follows: "On September 14, 1959 at or about 6:10 P.M. Ruth W. Feld, while operating a motor vehicle on Broad Street below York St., Phila., was collided into by a 'hit and run automobile' as defined in the policy. The said occurrence was the result of the negligence of said 'hit and run automobile', and resulted in serious and permanent expenses, pain and suffering, medical expense, financial loss, and damage to her automobile. Her injuries included fracture of right ribs, contusions and strain of the back involving left upper gluteral area, injury to the costovertebral area, right elbow, left second and third fingers, and cuts of the veins of both legs.
"The amount claimed is $35,000.00."
While none of this language got to the jury or into the record, it is quoted here solely for the purpose of presenting the background upon which defendant's crossexamination was predicated.

by plaintiff, when she was asked about the arbitration proceeding, as follows:

"Q. You testified in another proceeding growing out of the Greyhound accident before an arbitrator, a proceeding not against Greyhound, but involving the, let us say, unidentified car? Is that correct?

"A. Yes.

"Q. In that proceeding, did you not claim that your injuries resulted from that impact with the unidentified car?

"A. That it resulted?

"Q. That's right.

"A. It aggravated it.

"Q. It aggravated what?

"A. My lower back.

"Q. You mean that the impact with the unidentified car aggravated your original injuries?

"A. Yes, besides giving me the injuries to my ribs, and wherever else it happened".

Later on in the crossexamination of Mrs. Feld, she testified that she had misunderstood the questions and that the unidentified car had not caused the disabilities, stating: "I thought you were referring to the bus". Plaintiff did not object to this portion of the crossexamination, and makes no complaint as to this testimony. It certainly was an important duty of defendant's counsel to examine concerning this, since this went to the root of plaintiff's exculpatory position in connection with her contributory negligence problem.

Also, she testified that the unidentified car struck her vehicle "rather hard", so that defense counsel had an additional basis for crossexamination, since he had the right to inquire as to whether or not the injuries were caused in this impact or in the impact with a Greyhound bus which took place a split second later. His privilege to so inquire was further enhanced by

the fact that some of the witnesses testified unequivocally that when plaintiff's automobile swung eastwardly from its southerly course into the northbound traffic lanes there was no one behind the steering wheel. Thus, a permissible inference could have been drawn by the jury that she had been injured in the impact with the unidentified automobile. It also could have been inferred that she had simply fainted, rather than that she had suffered any injury in connection with the unidentified car. Furthermore, the testimony of plaintiff and of some other witnesses could have been accepted that she just "lost control" or that her swerve was the result of a very understandable emergency situation, created through no fault of her own.

In any event, it is unquestionable that defendant had the right to crossexamine as to the two issues in the arbitration proceeding: (1) Whether or not she had been forced, through no fault of her own, to go into the northbound lanes, and (2) whether or not any of the injuries, which required the extensive treatment that she described in this case, had been claimed in her arbitration proceeding to have been caused by the alleged impact with the unidentified car.

Plaintiff does not complain concerning the manner in which her case was left to the jury. She took no specific exception to the court's instructions to the jury, but, on the contrary, expressed satisfaction with the charge, aside from certain requests for additional instructions which were granted and carried out by the trial judge. She contends, however, that the impression created by defendant's handling of the arbitration crossexamination was so prejudicial to her cause as to warrant the granting of a new trial. Keeping in mind that the testimony quoted hereinabove, which opened up the arbitration matter, was not objected to by plaintiff, we note that when the crossexamination was again directed to the arbitration

"demand" and proceeding, there was an objection and extensive sidebar discussion. This resulted in a ruling that the written "Demand for Arbitration" could be used to test plaintiff's credibiltiy; but first, the inquiry must be as to whether or not plaintiff had any knowledge of the statements, because her counsel had stated that the averments in this document were his. Plaintiff then testified that she did not remember that her attorney had filed any claim on her behalf for arbitration, although she did remember testifying before an arbitrator. This led to the obvious next question, "Why did you think you were testifying?" Plaintiff answered: "I had no idea. I thought it was for the Greyhound Bus". Further questions were then permitted, on the ground that defendant had a right to test plaintiff's memory and credibility. The following testimony was recorded:

"Q. You recall recovering money as a result of that arbitration proceeding, do you not?

"A. Yes, yes.

"Q. Recovering the maximum amount allowed?

"A. Yes.

"Q. Right. And, didn't you know that this money was received as a result of the impact with the unidentified car?

"A. No. I thought it had to do with the Greyhound bus.

"Q. You thought Greyhound—

"A. (interposing) Yes. I thought it was Greyhound bus that had all to do with it. I knew it was the uninsured collision thing".

Plaintiff argues that this was like injecting a "collateral source" benefits factor, such as workmen's compensation, which can be considered sufficiently prejudicial, in some cases, to require the granting of a new trial. She relies upon the case of Lobalzo v. Varoli, 409 Pa. 15 (1962). We are unable to accept either

plaintiff's premise that there was the introduction of a collateral source elements, or her claim that this was a presentation of an improper type of prejudicial evidence into the case against her.

First of all, it is our conception that defendant has a perfect right to prejudice plaintiff's case by introducing evidence of prior statements by her or on her behalf which are directly contradictory to the position taken by her at the time of the trial. Indeed, the prejudice which may have been attributable to the arbitration crossexamination complained of, whether permissible or not, would be far less, in our judgment, than other contradictory evidence which was used by defendant and which is not urged for error now by plaintiff. For example, she was crossexamined concerning a personal injury claim in a previous accident which occurred on October 30, 1957. She testified at first that the injuries in that accident, among others, involved "the upper back". Defendant introduced the prior complaint in which she averred that she had suffered injuries "to the lower back", the area where she claims to have been injured in the accident in this case.

She was questioned concerning possible blurred vision, in connection with defendant's effort to show that she may not have had good vision on the day of the accident in this case. Her testimony, when she was confronted with the fact that she had claimed "blurred vision resulting from the 1957 accident", was at first that the vision defect had cleared up. At a later point in her crossexamination, however, she admitted, upon being confronted with evidence of a claim in a suit against the Yellow Cab Company in 1962, as a result of still another accident, that she had testified to having trouble with her right eye and that she had had such trouble since her husband died.

There are many other contradictions in her testimony, all of which were properly left to the jury. Defendant's analysis of the situation is that, if the motorist to her right had not been unidentified, but had been joined either as an additional defendant in this case, or as an original defendant, it would have been perfectly proper for defense counsel to crossexamine plaintiff as to the source of her injuries in order to attempt to learn or elicit her view as to which of the two impacts caused them. When a plaintiff claims damages, the jury has the right to know who caused them. If this plaintiff has claimed, at different times, that different persons were at fault in the same accident and that each of them played some part in causing her injuries, how can a trial judge properly refuse to allow one of them to explore the extent to which the claim against it was deemed by plaintiff to be attributable to the fault of the other?

There is no proper comparison between the arbitration proceeding in this case and a "collateral source" case, such as a workmen's compensation matter. Fault is not involved in a workmen's compensation claim, so that injecting the fact of compensation recovery into the tort case is irrelevant and could be confusing to a jury. The jury could conclude that the compensation benefits were paid because the employer also was at fault, since such payments were for the same injuries. Who was at fault, however, was the vital question in this case and in the arbitration case. Contrary to the workmen's compensation situation, plaintiff could have joined the unidentified tortfeasor in this suit, and made the same claim therein that she made in the arbitration proceeding. Under such circumstances, the lack of identity of the other tortfeasor, while it validated the arbitration proceedings, certainly did not invalidate the inquiry as to the fault of

that person on the issue as to who caused plaintiff's injuries.

Also, on this question of possible prejudice to plaintiff by her statements under crossexamination, we note that she first introduced the matter of "insurance" in an answer which did not require this disclosure, when she said, "I knew it was the uninsured collision thing". It also was plaintiff, and not defendant, who volunteered that, "I thought it had to do with the Greyhound bus", as an explanation for her demands and representations in the arbitration matter. Certainly, a crossexaminer is not required to anticipate an obviously untrue answer to his question. In other words, if there arose an inference that plaintiff was seeking to collect twice from the same defendant, it arose solely because of plaintiff's own apparently untrue statements. The written arbitration "Demand" was not permitted to go out with the jury, because of plaintiff's objection, so that if the jury did not learn the truth, we find no basis on which we can attribute this circumstance to defendant.

Finally, there is the question of the use by defendant of the term "maximum amount". When questioned as to whether she had not recovered "the maximum allowed" in the arbitration proceeding, plaintiff replied, "Yes". If this was deemed by plaintiff to be prejudicial, counsel should have made some objection, and a motion to strike, with a request for appropriate instructions to the jury. Assuming, nevertheless, that plaintiff still has the right to complain about this question, we still see no support for her complaint of basic prejudice. "Maximum amount", to this jury, could have been $1, or it could have been any imaginable sum, and the jury was left in doubt as to the true amount received by plaintiff, not because of anything defendant did, but because plaintiff decided to keep this from them.

Indeed, plaintiff's testimony (and this is the only actual testimony in the case concerning the arbitration) denies a collateral source by attributing the "maximum amount" to the "Greyhound bus", the defendant. Thus, it could be argued that since the jury might have accepted Mrs. Feld's untrue suggestion that her proceeding by arbitration was against the Greyhound Bus Company, they might very well have decided that she had already been paid by the bus company in the arbitration proceeding for what she was claiming here. If this happened, it was through no fault of defendant or of the court. Defense counsel did not make any such suggestion nor did he attempt to. This phrase got into the record solely as a statement volunteered by plaintiff, apparently to avoid the inference that the injuries for which she claims damages in this suit had been caused by some other tortfeasor. We are quite satisfied that whatever actual prejudice may have come to the jury from this whole matter of the demand for arbitration was due to plaintiff's unpredictable answers to basically proper crossexamination questions.

In any event, the charge clarified this whole situation, and, in the light of the court's instructions to the jury, it would be absurd to suggest that the jury could have believed that plaintiff had already collected for her injuries from defendant or anyone else. There is no suggestion therein that the jury could attribute any item of damages to the unidentified motorist. In fact, defense counsel's effort to have this stressed in the charge was rebuffed in open court before the jury, and the jury was instructed that this was a question for them to decide, as follows:

"Mr. McDevitt: I might also add, sir, I submit there has been no proof as to which impact, that of the unidentified car, if there was an impact, or of the Greyhound bus caused her the personal injuries or the

property damage, according to my recollection. Perhaps that is a matter for argument.

"The Court: There is a question of whether or not there was an impact—

"Mr. McDevitt (interposing) : Yes, sir.

"The Court: (continuing). . . . with Mrs. Feld's car; not if you accept her testimony. If you accept her testimony, there was an impact. But, what I am saying is that this is not uncontradicted. There are other witnesses who thought there wasn't any, and I simply wanted to stress that despite whether there was a contact or not, if you find that she was affected by an emergency not of her causing, and this made her make this left swerve, then you still decide that it wasn't her fault that she was over there.

"Mr. McDevitt: What I mean, Your Honor, is that there is absolutely no proof that if there had been an impact, that impact might not have been the thing that caused the property damage and the injuries, so there is that question in the case, as well.

"The Court: I will let the jury decide that. I don't think we have any detail on where the nine hundred and some dollars of property damage to this automobile actually was. But, we do have the testimony of Mr. Finkel, which is not contradicted, that the bus hit the vehicle of Mrs. Feld, and that it was sort of molded into the side of her car. If you remember his testimony, the side of her car had assumed the shape of the right front of the bus, by virtue of the impact, so that you, I think, have a right to decide that the bus' impact did damage the car".

A review of the record strengthens our conviction that plaintiff's downfall was not due to the items of which she now complains, but was far more likely due to the uncontradicted physical circumstances. The basic facts posed almost insurmountable obstacles to the successful proof of her claim. The circumstances

in this case also buttress our conclusion that the authorities cited by plaintiff are inapposite, since the facts herein so strongly suggest that the verdict of the jury was more likely based on the lack of negligence on the part of defendant than upon the acceptability of plaintiff's claim for damages, either as to her freedom from contributory negligence or her right to claim from this defendant for the injuries of which she complains. As we have previously mentioned, the question of negligence on the part of defendant was extremely doubtful, and this was left to the jury only because there was a possible inferential basis for charging defendant with negligence. The overwhelming evidence was more strongly the other way, indicating that defendant did his best in a trying emergency and so should not have been blamed for what occurred.

Accordingly, since we could find no basis that would justify the retrial of this case, plaintiff's request therefor was **denied.**