## Francis J. PETERSON
### v.
## CALMAR STEAMSHIP CORPORATION.
### Civ. A. No. 35194.

United States District Court
E. D. Pennsylvania.

Feb. 5, 1969.

**10**

Avram G. Adler, Philadelphia, Pa., for plaintiff.

Joseph P. Green, Philadelphia, Pa., for defendant.

## OPINION

MASTERSON, District Judge.

On February 27, 1964, the plaintiff, Francis J. Peterson, instituted suit in this Court against Calmar Steamship Corporation, hereafter referred to as Calmar, to recover damages he allegedly incurred as a result of an accident on June 10, 1963. At the time of the accident Peterson was working as a longshoreman, assisting in the loading of cargo aboard a vessel owned by Calmar, i.e. the S/S "Marymar". In his complaint Peterson charged that the accident resulted from Calmar's negligent supervision of the loading operation and/or from the allegedly unseaworthy condition of the S/S "Marymar".

The case came to trial on November 17, 1967, and, with the agreement of counsel, the Court severed the issue of liability from the issue of damages. (N. T. Liability Case, p. 7). On November 22, 1967, counsel waived a jury trial of the liability issue and the Court, acting as the fact-finder, decided that Calmar was liable to the plaintiff for injuries which he had sustained as a result of the June 10th accident, because the accident had been caused by the unseaworthy condition of the S/S "Marymar". (N. T. Liability Case, p. 380), and (N. T. Damage Case, p. 2), (All future references to the transcript will be to the transcript of the "Damage Case"). A jury was sworn to try the damage aspect of the case and, on December 2, 1967, the jury returned a verdict in the amount of $4,116.50, upon which verdict a judgment for the plaintiff was entered on December 6, 1967.

Plaintiff has moved for a new trial limited to the issue of damages. In his motion the plaintiff contends generally that the verdict was against the evidence and the law, and " * * * shockingly inadequate and low * * *", Motion for a New Trial, (filed December 15, 1967), p. 2. In his briefs in support of his motion, however, the plaintiff contends further that the Court erred in its rulings upon four separate evidentiary problems, and that these errors prejudiced the plaintiff and entitle him to a new trial on the issue of damages. For reasons discussed below the plaintiff's motion for a new trial is denied.

The plaintiff advances his motion for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, which provides, in pertinent part:

"A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States * * *".

Rule 59 thus indicates that the plaintiff properly can move for a new trial on the limited issue of damages. A court properly may limit a new trial to this issue when liability has been " * * * competently determined by the jury, and when the damage issue is not interwoven with the liability issue." Moore, Federal Practice, Vol. 6A, ¶59.06, p. 3761. See generally, Paluch v. Erie Lackawanna Railroad Co., 387 F.2d 996, 1000 (C.A.3, 1968).

The damage issue in this case essentially depended upon the jury's determination of the relationship which existed between the initial accident of June 10, 1963, and a later accident, in which the plaintiff was involved, which occurred in October, 1964. The plaintiff's position in general was that the second accident was precipitated by a residual disability of his which had been caused by the first accident. This position was grounded, in part, upon the testimony of the plaintiff and the testimony of several of his fellow workers. The defendant

maintained, on the other hand, that the October, 1964, accident was related in no way to the earlier accident. In addition to medical testimony in support of this position, the defendant offered a history allegedly given by the plaintiff on the day of the October, 1964, accident to a nurse stationed near the scene of the accident. This report contradicted the plaintiff's factual testimony in one significant aspect and it was clear that the jury's ultimate determination would depend significantly upon its assessment of the credibility of the various witnesses.

■ ■ Initially it is clear that motion for a new trial should be denied to the extent that the plaintiff has challenged in a general way the inadequacy and/or impropriety of the verdict. The evidence relevant to the alleged relationship between the two accidents admittedly was conflicting, and could support a reasonable determination that there was no relationship between the accidents, or that, in the alternative, the first accident was a proximate cause of the second. In such circumstances, particularly when the matter for decision is the extent of damages suffered by a plaintiff, it is improper for a court to interfere with a jury's verdict, unless the verdict was so low as to shock the conscience of the court and/or unless the court committed prejudicial error in the course of the trial. See, e. g. Curtis Machine Co. v. MacInnes Steel Sales Co., 160 F.Supp. 438, 441 (W.D.Pa., 1958), and Mainelli v. Haberstroh, 237 F.Supp. 190, 192 (M.D.Pa., 1964), aff'd 344 F.2d 965. A review of the trial transcript indicates that the verdict rendered by the jury in this case was not so low as to shock the conscience of the Court and that it will fairly compensate the plaintiff for the injuries which the jury found that he had sustained as a result of the accident of June 10, 1963. The plaintiff has charged further that the Court committed prejudicial error requiring a new trial in ruling on four questions of evidence.

■ A motion for a new trial, of course, may be grounded on an allegation that evidence was admitted or excluded improperly during the course of a trial and that such error prejudiced the moving party's rights to a fair trial. See generally, Moore, supra, ¶ 59.08[2], pp. 3777–3778, and cases cited therein. There is, however, no precise formula to guide a court in deciding such a motion. At best a court may employ the standard set forth in Rule 61 of the Federal Rules of Civil Procedure:

> "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict * * * unless refusal to take such action appears to the court *inconsistent with substantial justice.* * * *" (Emphasis Supplied).

There are a few additional principles which can assist the court in deciding whether refusal to order a new trial would be " * * * inconsistent with substantial justice * * *", See generally, Barron and Holtzoff, Federal Practice, Vol. 3, § 1353, p. 444, and, e. g. Horibe v. Continental Baking Co., 298 F.2d 43, 45–46 (C.A.7, 1962) (possible error may be treated as harmless where counsel did not seasonably object to the allegedly improper ruling), and Aetna Casualty and Surety Co. v. Tryniecki, 293 F.2d 289, 290–291 (C.A.5, 1961) (possible error may be treated as harmless where the moving party's counsel himself elicited the objected-to evidence). For the most part, however, the harm which has resulted from any particular error can be assessed properly only by an examination of the facts of the individual case. A review of the facts of this case compels the conclusion that the evidentiary rulings were not error, and that, even if considered as error, they constituted harmless error.

Initially, plaintiff urges that the court erred in permitting (1) cross-examina-

tion of two of the plaintiff's co-workers who testified in his behalf, i. e. Joseph Harvey and Andrew Tomaszewski, as to their membership in the same Union as the plaintiff; and (2) in permitting defense counsel to advert in closing argument to these facts and the additional fact that plaintiff's counsel represented this Union. See, respectively, (N. T. pp. 356–358, 369–372, and 597–598). Plaintiff argues that both the testimony and the references to the testimony in defense counsel's argument had no probative force and had the effect of "unnecessarily tarring" the plaintiff's witnesses. See, Bratt et al. v. Western Air Lines, Inc., 169 F.2d 214, 217 (C.A.10, 1948), and Lee Way Motor Freight v. True, 165 F.2d 38, 41 (C.A.10, 1947).

■ There is an infinite range of circumstances to which counsel legitimately can refer for the purpose of demonstrating a witness's bias in favor of one party. See generally, Wigmore, Evidence, § 949, pp. 499–501, and Henry, Pennsylvania Evidence, § 815, pp. 278–279. Among the more common circumstances are a witness's common membership with a party in an organization such as a union, See generally, Lee Way, supra, 165 F.2d at 41, and/or the existence of a biased relationship between the witness and counsel for one or the other party. Ibid., p. 41. Plaintiff's counsel himself attempted to illustrate the bias of one of the defendant's medical witnesses, Dr. Bernard D. Grant, by cross-examining him as to the compensation he expected to receive from defense counsel for presenting his expert testimony in this case. (N. T. pp. 418–419).

■■ On occasion, as in both *Bratt*, supra, and *Lee Way*, supra, cross-examination for the purpose of establishing a witness's bias may extend too far and produce prejudicial error requiring reversal by the introduction into the trial of totally collateral and inflammatory considerations. In the present case, however, defense counsel limited his challenged cross-examination to eliciting only the most noteworthy relationships between the witnesses and the plaintiff. Moreover, he carefully circumscribed his reference to this testimony in his summation:

> "This is peculiarly within your province to decide to what extent these fellows who had worked so closely together for such a long period of time, who (sic) would like to see Mr. Peterson do well, who (sic) would like to see Mr. Peterson get some money here in this lawsuit." (N. T. p. 598).

Neither the challenged testimony nor the challenged portion of defense counsel's summation constitutes error.

Secondly, plaintiff urges that the court erred by permitting testimony which referred to the plaintiff's receipt of workmen's compensation during the period he was debilitated by the accident of June 10, 1963. In support of his contention that such error was prejudicial and requires the court to grant him a new trial, plaintiff relies upon Eichel v. New York Central R. R. Co., 375 U.S. 253, 255, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), Eichmann v. Dennis, 347 F.2d 978, 981–982 (C.A.3, 1965), Lobalzo v. Varoli, 409 Pa. 15, 17–21, 185 A.2d 557 (1962), and Boudwin v. Yellow Cab Co., 410 Pa. 31, 32–38, 188 A.2d 259 (1963).

■ This court has no disagreement with the general principle reflected by the cases upon which the plaintiff relies, i. e. that a plaintiff's receipt of collateral benefits from a source other than the alleged tortfeasor is irrelevant to an action brought by the plaintiff against the tortfeasor because the latter, if negligent, is liable for the full amount of damages incurred by the plaintiff as a result of his wrongdoing. See generally, Boudwin, supra, 410 Pa. at pp. 32–33, 188 A.2d 259, and Lobalzo, supra, 409 Pa. at 17, 185 A.2d 557. In this case, however, the plaintiff has failed to refer the Court to those times when the alleged "passing references to compensation", were made, and the Court, after a re-

view of the trial transcript, has located only one ambiguous reference:

"Plaintiff's counsel: After you were under the treatment at St. Mary's, what happened to you after that?

Plaintiff: Well, the insurance company—

Plaintiff's counsel: You went to see another doctor?

Plaintiff: They transferred me back to their doctor." (N. T. p. 55).

It is extremely unlikely that the jury interpreted these unexplained comments as a reference to the plaintiff's receipt of workmen's compensation, or that these comments suggested to the jury that the plaintiff was attempting to recover twice for the injuries he had sustained as a result of the June 10, 1963 accident. Moreover, the trial transcript indicates that *counsel for the defendant* assiduously avoided making any reference to the plaintiff's receipt of workmen's compensation. In view of these circumstances, and particularly because plaintiff's counsel himself was responsible for injecting this matter into the case, and subsequently did not object to the testimony, See, respectively, *Aetna Casualty,* supra, and *Horibe,* supra, the motion for a new trial must be denied to the extent that it is based on this contention.

Thirdly, plaintiff urges that the Court erred in permitting him to be cross-examined as to his change of residence. He argues that this line of examination indicated that he had moved from a neighborhood which was integrated to one which was more affluent and segregated, and that, therefore, it permitted the jury to make improper inferences as to his character.

Review of the transcript indicates that in fact there was no reference during the trial to the relative affluence . or racial heterogeneity of either the neighborhood where the plaintiff originally had lived, the precise location of which was never mentioned, or the neighborhood where the plaintiff lived at the time of the trial. (N. T. pp. 257, 278–

280). Moreover, if there is public knowledge of these facts, as the plaintiff has maintained, this Court is unaware of it, was totally surprised at trial when counsel explained his objection at sidebar, and is convinced that counsel's anxiety on this account was totally unwarranted. (N. T. pp. 287–291). In any event, plaintiff's counsel himself introduced the matter on direct examination of the plaintiff, (N. T. p. 257), and defense counsel's cross-examination constituted only a somewhat fuller exploration of the issue. The case relied upon by the plaintiff in support of his position, i. e. Dow v. Carnegie-Illinois Steel Corporation, 165 F.2d 777, 780–781 (C.A.3, 1948), involved the admissibility of evidence relating to the marital happiness of the widow-plaintiff who had instituted the wrongful-death action there and, thus, is materially distinguishable from this case.

Finally, the plaintiff urges that the court committed prejudicial error by permitting him to be cross-examined as to a discrepancy between answers to interrogatories which he had filed in an unrelated action and testimony which he gave in the course of this trial. As support for this contention the plaintiff relies upon the general principle that contradiction of a witness's testimony should not be permitted by examination of collateral matters. See generally, Wigmore, Evidence, 3rd Edition, Vol. 3, § 1003 et seq., and Commonwealth v. Petrillo, 341 Pa. 209, 223–226, 19 A.2d 288 (1941).

Following the injury to his back in June, 1963, which is the subject of this suit, the plaintiff sustained two other injuries, i. e. an injury to other portions of his body in an autombile accident in February, 1964, and the injury to his back suffered in October, 1964. As a result of the February, 1964, accident, the plaintiff instituted a suit in the state courts in which he claimed, in answers to the defendant's interrogatories, that he was totally disabled as a result of that accident from February, 1964, to September, 1964. During cross-examination

in this case, however, he claimed that this accident disabled him for only a nine or ten week period, i. e. from February, 1964, to May, 1964. Defense counsel wished to expose this inconsistency in his cross-examination of the plaintiff.

 In his treatise, Evidence, supra, § 1003, pp. 657–658, Professor Wigmore acknowledges that there is a general standard which may be applied for determining whether a matter is collateral, i. e. "Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?", Attorney-General v. Hitchcock, 1 Exh. 99, Pellock, C.B. He emphasizes, however, that the majority of courts recognize that a determination of collateralness can be made only by reference to the unique circumstances of a particular case. In making such reference courts determine whether the facts constituting the objected-to evidence are either "(1) facts relevant to some issue in the case * * * (or) (2) facts relevant to the discrediting of a witness.", Petrillo, supra, 341 Pa. at 224, 19 A.2d at 295. Since the facts which were the subject of the objections here clearly come within the ambit of both of these categories this Court is of the opinion that the objected-to evidence was not so "collateral" as to require exclusion. Even if it is assumed, however, that plaintiff's counsel's efforts to render the facts irrelevant to the substantive issues of the case were successful, (N. T. p. 292), the error involved in permitting the testimony was not so substantial as to require the court to grant a new trial.

The Court is particularly not disposed to accept this final contention in view of the fact that plaintiff's counsel did not advance a formal objection to these rulings until some time after the trial, and, in fact, acceded to the court's eventual resolution of the problem:

The Court: "O.K., on that colloquy the only inference they can draw is that Mr. Peterson took an affidavit under circumstances under which he should not have taken the affidavit and that shows a certain carelessness with respect to his sworn statement. This is a fair inference from the proper groundwork questions leading up to that affidavit. Beyond that they can't infer anything.

Plaintiff's Counsel: If Your Honor makes that clear, I think it is a fair comment if Your Honor would just say exactly that.

The Court: Well, O.K., I will say that. I would think that you would want me to say that.

I instruct you now * * * (defense counsel), I would not let you argue beyond that to this jury, but you can argue that. I think you prefer to hear him argue it and me charge it.

Plaintiff's Counsel: Let him argue it, and I will handle it.

The Court: All right". (N. T. p. 376). The transcript indicates that plaintiff's counsel did manage the problem in this fashion rather than preserve an objection to the testimony.

During his summation, defense counsel expressly referred to the disputed testimony only once, and then in temperate tones:

"You learned during the testimony that Mr. Peterson took an affidavit in answering interrogatories in connection with the automobile accident to the effect that the facts that were set forth in the answers to the interrogatories were true and correct to the best of his knowledge, information and belief. Then he testified that he hadn't read the answers or that he couldn't recall whether he read them or not. Your recollection on exactly what he said controls on this point. Think about what he did say. Whatever he said doesn't that show a very, very loose regard for an affidavit, for sworn testimony? I think this is one aspect of Mr. Peterson's credibility that you have got to consider." (N. T. pp. 586–587).

Counsel for the plaintiff responded in his rebuttal:

"Defense counsel talks about an affidavit. I offered the whole thing and (Defense Counsel) objected and His Honor ruled, and you cannot quarrel with His Honor's ruling. What we talked about, what that affidavit swears to, is not before you. Mr. Peterson is not guilty—and I submit this to all of you sitting in the jurybox, to anyone of you who has been to a house closing or have been to anything involving lawyers where a lot of papers are given to you and you sign. Mr. Peterson signed that because of his faith in me as many have done at many closings. Many people have signed lots of documents with a lot of small print. This is not unusual. To try to use that to make a liar and a thief out of Mr. Peterson because if Mr. Peterson is the same as a thief. (sic). I say it is not fair. That is (sic) mighty thin reeds, where there is so much possible evidence to use." (N. T. p. 609).

Although plaintiff's counsel previously had requested the Court to charge the jury that it could make only limited inferences from this testimony, evidently he changed his mind at the time of the charge, for he applauded the trial judge for " * * * threading * * * through what I consider a mine field with admirable grace * * *", (N. T. p. 665), and, in fact, specifically requested the Court not to comment on the evidence. (N. T. p. 670. Plaintiff's counsel next referred to this dispute almost a year after the conclusion of the trial, i. e. at the oral argument on the motion for a new trial which was conducted on Monday, November 25, 1968.

The review above of each of the plaintiff's four evidentiary objections indicates that the trial court probably erred as to none, and that, if it did commit error, the error was not so prejudicial as to render a refusal to grant the plaintiff a new trial a decision "inconsistent with substantial justice." Plaintiff has

expressed the belief that the jury rejected his theory regarding the relationship between the June, 1963, and October, 1964, accidents because of improper inferences raised by the objected-to evidence. In view of the fact that this evidence properly was admitted at trial the plaintiff has no cause for complaint. Assuming, however, that the evidence was admitted improperly, it is clear that it constituted only a small fraction of the defendant's case, that there was a substantial body of material and probative evidence presented by the defendant which reasonably would support the jury's verdict, and that, therefore, the plaintiff is not entitled to a new trial.