## Davin v. Shur-Line Manufacturing Co.

*Peter J. Mansmann,* for plaintiff.
*John A. Bacharach,* for defendant.

ZELEZNIK, *J.,* October 24, 1986 —Defendant, Shur-Line Manufacturing Company Inc., filed and argued this motion for post-trial relief following a jury verdict of $132,336.07 in favor of plaintiff. De-

lay damages were added pursuant to rule 238 on plaintiffs' motion for a total award of $175,343.29. Plaintiffs filed their complaint in negligence and strict liability. Defendant, Shur-Line Manufacturing Company Inc. admitted liability, and the only issue presented to the jury was the extent of damages.

Plaintiff was employed as a painter for the Allegheny County. On October 1, 1980, he was using a device manufactured by Shur-Line to spin-dry paint brushes when that device malfunctioned causing him to suffer injury to his right hand. This occurred during work hours. The injury consisted of a laceration between the knuckles of the fourth and fifth fingers of his right hand, requiring several stitches. He was given emergency treatment at Mercy Hospital of Pittsburgh where it was determined that an artery was cut. Two weeks later he returned to work. However, after he complained of pain, his employer's physician sent him home again with advice to seek a specialist, one Dr. Katz. While off work during the months of November and December 1980, he visited Dr. Katz several times. He was later advised by Dr. Katz to see Dr. Joseph E. Imbriglia. Dr. Imbriglia treated him for approximately 15 months, after which he underwent surgery for carpal-tunnel syndrome. After wearing a cast for several weeks, he developed bursitis in his right shoulder, which required treatment. The question put to the jury was whether plaintiff's claims of carpal-tunnel syndrome, ulnar nerve damage and bursitis were all caused by the injury of October 1, 1980, or were the consequences of long-term, work-related wear and tear common to his occupation as a painter. The jury found in favor of plaintiff. Shur-Line next filed this motion for post-trial relief.

## ARGUMENTS

Shur-Line argued and briefed these assertions of trial error: (1) the trial judge erred in refusing to withdraw a juror and declare a mistrial after plaintiff's attorney in his opening to the jury, stated that plaintiff had been paid workmen's compensation benefits in the amount of $16,000, which had to be repaid; (2) in denying defendant's request for binding instructions concerning plaintiff's alleged continuing problems with his hand and arm and his claim for bursitis, because such claims were not supported by competent evidence; (3) the verdict was excessive and against the weight of the evidence; (4) the trial judge erred in molding the verdict by adding rule 238 delay damages; (5) in permitting plaintiff's expert medical witness to be cross-examined to bring out the fact that he examined plaintiff at defendant's request; and (6) in its instructions to the jury concerning plaintiff's life expectancy and use of life tables which was not supported by the evidence.

During the trial, plaintiff's counsel commented and argued that plaintiff had received approximately $16,000 in workmen's compensation benefits for which his employer's compensation carrier, Volpe-Rogal, has a lien. Defense counsel, John A. Bacharach, timely objected to such reference. The trial judge instructed the jury to disregard any mention of workmen's compensation in its decision making process.

Shur-Line now argues strenuously that no instructions could cure the taint in the minds of the jurors that plaintiff, a working man with a family, was $16,000 in debt and being pressed by an insurance company to repay this amount of money; that the jury was misled into believing that repayment

would be required regardless of the outcome of this lawsuit.

It is ordinarily reversible trial error for a third-party tortfeasor to bring such a subject to the attention of the jury since it is suggestive of double recovery. *Lobalzo v. Varoli,* 409 Pa. 15, 185 A.2d 557 (1962). This "collateral source rule" doctrine is grounds for a new trial, with few exceptions. Id.; *Downey v. Weston,* 451 Pa. 259, 301 A.2d 635 (1973). Although this reference to workmen's compensation was brought out by plaintiffs, and not a defendant, we believe that prejudice to Shur-Line resulted. This trial strategy introduced unnecessary and highly charged evidence into the trial. Such evidence could distract the jury's attention from causation. A jury with information of receipt of money for damages inflicted upon plaintiff might assume causation rather than determine it, because why else would a plaintiff be compensated unless his injuries were the direct and proxmate cause of defendant's negligence? The jury may get the impression that an average working man with a family to support who is injured through no fault of his own has incurred a substantial lien against him for which he is responsible whether or not he recovers against the third-party tortfeasor in the action before them.

After the trial judge refused to order a mistrial, defendant's attorney was forced to attempt to overcome the prejudice as best he could. In his closing argument, he stated:

"Now, there ultimately is a question. There has been some discussion about this problem of workmen's compensation. This should be clear to you, and ultimately the judge will give you some instructions on that, that Mr. Davin isn't obligated to reimburse anyone for anything except insofar as you will award medical bills that would be associated with

the cut. If he has other problems that are related to his work, he doesn't owe anyone $15,000 or $17,000. If you would decide that this elbow problem was not caused by the accident, that doesn't mean anything to him except there is no reimbursement because that was on the — this was just a work injury that might occur at any time. It was related to the accident, it was going to his work in the sense of him being a painter, he is entitled to that and doesn't have to reimburse anybody. At most we would be talking about whatever you would attribute to the accident and only insofar as it relates directly to the medical bills and lost wages and not inconvenience and pain and suffering."

He went on to paraphrase the upcoming court's charge to the jury with the admonition that they should not consider it. The court properly instructed the jury on the elements of damage to which plaintiff is entitled to recover, including reasonably incurred medical expenses and lost wages that were the proximate result of Shur-Line's admitted fault. The trial judge added the following:

"This is a rather important instruction. Workmen's compensation has been brought into this case. Didn't belong here and you must disregard that fact. The wealth or poverty of a plaintiff is irrelevant. The law is the same. And it makes no exceptions for any other benefit or hardship unrelated to the case in court here . . . [W]hether or not workmen's compensation has a claim or not is not a factor and disregard it. You must do that."

After analysis, we find reversible error on this issue. Although the jury was informed on the effects of workmen's compensation as it related to plaintiff, and informed that any verdict they may render related only to reasonable medical costs incurred and

wages lost as a result of the fault of Shur-Line, and only these elements would be subject to the lien the compensation carrier had against plaintiff, and notwithstanding defense counsel's attempt to give a fair and adequate explanation of the law of workmen's compensation vis-a-vis plaintiff's financial situation, and the curative instruction by the court, we cannot be certain that the jury fully understood the issue and consequences. We believe that this was tainted and would grant a new trial on this exception alone.

However, another matter of trial error argued by defendant is an independent ground for a new trial. Plaintiff's claims for damages included continuing or future medical problems with his hand, arm and shoulder. Specifically, plaintiff made claim for future pain and suffering in connection with carpal-tunnel and ulnar nerve damage, and also bursitis.

We reject defendant's argument that the evidence on plaintiff's bursitis was insufficient to base a claim for future pain and suffering. The testimony of Dr. Nellas and that of Dr. Imbriglia had a sufficient foundation to raise a jury question on the issue of future pain and suffering as the result of bursitis.

However, the medical testimony on future carpal-tunnel syndrome and ulnar nerve damages was insufficient to allow that matter to be considered by the jury. There was no evidence whatsoever that those injuries will cause any problems in the future. Rather, the evidence was to the contrary, as testified by plaintiff's own medical expert.

Notwithstanding the absence of evidence on future problems in connection with these injuries, plaintiff's counsel in his summation, failed to separate the arm, wrist and hand problems corrected by surgery from the bursitis, and argued that the jury

should consider all of plaintiff's claims. Defendant presented suggested plaintiff's points for charge numbers 10, 11, and 14, which may have cured this matter, but those points were denied.

These two matters, each one a sufficient reason to grant a new trial, together with their cumulative effect, require that a new trial be granted. This being dispositive, the other assertions of trial error will not be addressed.

### ORDER

And now, this October 24, 1986, for reasons set forth in the foregoing opinion, the motion for post-trial relief filed by defendant is granted, and a new trial is ordered limited to causation and damages presented at the first trial.