**Harry R. LEWIS, Appellant,**

v.

**PENN CENTRAL COMPANY,**
a corporation.

**No. 71–1499.**

United States Court of Appeals,
Third Circuit.

Submitted April 6, 1972.

Decided April 26, 1972.

Paul E. Moses, Evans, Ivory & Evans, Pittsburgh, Pa., for appellant.

Richard D. Klaber, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellee.

Before ADAMS, and GIBBONS, Circuit Judges, and BECKER, District Judge.

## OPINION OF THE COURT

PER CURIAM:

In 1965, while in charge of one of the defendant railroad's freight crews, plaintiff, Harry Lewis, was seriously injured. The crew had been ordered to place two railroad cars on a siding on which there were already several cars. The crew, without difficulty, was able properly to place one of the cars, but the placement of the second car was much more complex. Of the alternative means available, Lewis decided to swing the second car onto a nearby siding in order to facilitate its coupling to the end of the engine opposite from its original coupling. When the car failed to clear the cross-over track, Lewis elected to employ a technique known as "poling" to move the car into proper position for coupling. For this purpose, Lewis obtained a four-by-four-inch piece of lumber and inserted it between the locomotive and the second car. The pole slipped out during the first try. Then, on the second attempt to move the car, the pole snapped in two, and one of the flying pieces struck Lewis in the chest and stomach, causing his injuries.

Suit was commenced in 1968 in the district court pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. After both sides presented their evidence, the case was submitted to the jury on special interrogatories. The jury found that the railroad was negligent, and that Lewis' contributory negligence was the cause of 75% of his injuries. Without regard to Lewis' contributory negligence, the jury determined the damages to be $100,000, which the district court reduced to $25,000 based on Lewis' 75% contribution to his injuries.

Lewis has appealed from the verdict as reduced, contending that certain remarks made by the railroad's counsel during his closing argument to the jury were so prejudicial that Lewis should be awarded a new trial limited solely to the issue of damages. The statement complained of was:

"How about this problem, members of the jury, that this man attempts to convince you that he is totally disabled at the present time yet he was able to work six to eight months in a desk job which he left for an unexplained reason, not that he couldn't do the work; attempts to convince you that he is destitute, having a hard time financially. Does that jibe with a man that leaves a job, doesn't attempt to get another? Does that jibe with a man who has the time and energy and finances to engage in a

political campaign and run for borough council; has a home in Brentwood, and raising a family, a child in college? I don't know what his personal circumstances are. I have no way of knowing, but I say to you based on what we can see, it would not appear that the picture is just what the plaintiff would have you believe it is."

The plaintiff immediately moved for the withdrawal of a juror—a mistrial—and the district court denied the motion, stating:

"* * * I will caution the jury again that arguments of counsel must be founded on the testimony, and since the plaintiff now has the opportunity to rebut the defendant's argument, I don't believe the plaintiff has been seriously harmed."

Lewis' attorney in his argument to the jury then proceeded to rebut the assertions made by the railroad's counsel, and the district court, as he had promised, charged the jury:

"Again I caution you that any argument, statement, or remark of counsel on any phase of this case which does not have any support in the evidence or the testimony which you heard should be disregarded by you. Counsel may argue inferences from the facts but may not argue facts which have not been presented to you by way of testimony. So if there were any such facts that came out, and I think there were a few here and there, you should disregard them, put them out of your minds altogether because they have no basis in the testimony."

■ In testing the propriety of the district court's refusal to declare a mistrial, we are bound by the rule that, "A motion to withdraw a juror is addressed to the sound discretion of the trial judge and his refusal to withdraw a juror will be reversed only for a palpable abuse of discretion." Menarde v. Philadelphia Trans. Co., 376 Pa. 497, 103 A.2d 681, 687 (1952); Corbett v. Borandi, 375 F.

2d 265, 270 (3d Cir. 1967). Here, the plaintiff was permitted to rebut any impropriety which may have existed and the district court, who was in a position to evaluate the effect the remarks had on the jury, was of the opinion that no serious harm would result. In these circumstances, although the closing argument by the railroad's counsel may not have been completely proper, the district court did not abuse its discretion by denying plaintiff's motion for the withdrawal of a juror. *Corbett, supra,* at 270.

■ Prior to the oral argument in support of his appeal, plaintiff filed a motion with this Court asking that we remand the cause to the district court so that Lewis might file there a motion for relief from the judgment pursuant to Fed.R.Civ.P. 60(b). At the trial, following instructions not objected to by the plaintiff, the jury specifically found that there had been no violation by the railroad of the Boiler Inspection Act, 45 U. S.C. § 22 et seq. Lewis contends that because on March 1, 1972, another district judge in the same district ruled that a push pole might constitute an appurtenance to the locomotive, thereby bringing into operation the provisions of the Boiler Inspection Act, we should grant his motion to remand. Zollinger v. Pittsburgh & Lake Erie R. R., 337 F. Supp. 913 (W.D.Pa.1972). After careful consideration of the facts and holding of Zollinger, we find that case to be distinguishable from the present one. Among other differences, the push pole in *Zollinger* had been supplied by the railroad, while here Lewis sought his own make-shift pole. In *Zollinger,* the car to be poled had a bracket on it for that specific purpose. In the present case, the evidence indicated that there was no push pole pocket on the freight car. Accordingly, the interests of justice would not be served by granting plaintiff's motion to remand.

The judgment of the district court will be affirmed.