Reginald C. POE

v.

## NATIONAL RAILROAD PASSENGER CORPORATION a/k/a Amtrak.

Civ. A. No. 79–2994.

United States District Court,
E. D. Pennsylvania.

Feb. 25, 1982.

Joseph Smukler, Philadelphia, Pa., for plaintiff.

Richard A. Kraemer, Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff Reginald Poe brought this action seeking to recover damages for back injuries sustained while he was riding on a train, operated by defendant AMTRAK, which collided with AMTRAK track maintenance equipment on April 20, 1979. Following the trial of plaintiff's claim, which commenced on November 12, 1981 and was completed on November 18, 1981, the jury returned a verdict for plaintiff, awarding him a total of $6,000 in compensatory damages for past lost earnings and for pain and suffering. Plaintiff has now moved pursuant to Federal Rule of Civil Procedure 59(a)(1) for a new trial. In support of his motion, Mr. Poe contends that because, in his view, (a) certain remarks made by defendant's counsel during closing argument were prejudicial, and (b) the verdict was grossly inadequate, a new trial is required.

As a general rule, motions for a new trial are addressed to the sound discretion of the trial court. See Lewis v. Penn Central Co., 459 F.2d 468 (3d Cir. 1972); Coleman v. Quaker State Coca-Cola Bottling Co., 328 F.Supp. 314 (E.D.Pa.1971). In exercising this discretion, courts have granted new trials when closing arguments contain comments calculated to influence the jury improperly, see, e.g., Draper v. Airco, Inc., 580 F.2d 91 (3d Cir. 1978); Ayoub v. Spencer, 550 F.2d 164 (3d Cir. 1977), cert. denied, 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1978), or when the verdict was so inadequate that to let it stand would constitute a miscarriage of justice. See, e.g., Feinberg v. Mathai, 60 F.R.D. 69 (E.D.Pa.1973).

So that plaintiff's contentions concerning the allegedly prejudicial remarks of counsel for defendant and the adequacy of the verdict may be viewed in the proper context, a brief review of the facts presented at trial is necessary. Mr. Poe was hired in 1977 by AMTRAK as a trackman—a job which calls for the performance of the many strenuous chores (such as lifting ties, pulling timbers and carrying other track materials) involved in track maintenance. While so em-

ployed, plaintiff had intermittently complained of back pains and had missed some work in the first months of 1979 due to these pains.

On April 20, 1979, Mr. Poe traveled on an AMTRAK train from his assigned job-site in Trenton to New York City, apparently in order to bid on a new job assignment. After inquiring in New York about possible job opportunities, he boarded an AMTRAK metroliner to return to Trenton. As this train neared Edison, New Jersey, it collided with other AMTRAK equipment on the same track. According to Mr. Poe, the force of this collision threw him from his seat, injuring his back.

Plaintiff missed work following this incident from April 20, 1979 to August 13, 1979, when he returned to full-time duty as a trackman. Plaintiff's complaints of back pain returned in 1980. And, finally, approximately one year after he had returned to work on a full-time basis, Mr. Poe left his job on August 20, 1980, again apparently because of back pain. He has not returned to work since that date.

Initially, Mr. Poe sued his employer, AMTRAK, both under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, claiming he was injured in the course of his employment, and on a pendent negligence claim. However, after the close of defendant's evidence, plaintiff withdrew his FELA claim and pursued only the alternative common law claim of negligence on the theory that AMTRAK had breached the duty of care it owed to him as a passenger. At the close of all evidence, a verdict was directed in plaintiff's favor on the question of negligence since defendant had failed to present any evidence showing that the April 20 collision was not due to its own negligence. Responding to the special interrogatories which were propounded, the jury found the defendant liable, and awarded Mr. Poe, in compensation for the injuries attributable to the collision, $4,800 for past lost earnings, $1,200 for pain and suffering, and no damages for future lost earnings.

## I

■ Plaintiff first contends that a remark by counsel for defendant during closing argument referring to him as a "con man" was so prejudicial that a new trial is warranted. While such a comment standing alone comes perilously close to being improper *per se*, the remark must be viewed in light of all the testimony adduced at trial and in the context of the entire closing argument in order to assess whether this comment was in fact impermissibly prejudicial. Over the course of the trial, defense counsel sought to challenge plaintiff's credibility at a number of points, both during cross-examination of plaintiff concerning inconsistencies in the medical history he provided when applying for a job with AMTRAK, *see* N.T. at 42–43, Nov. 16, 1981, and during cross-examination of plaintiff's expert, Dr. Klinghoffer, with respect to the completeness and accuracy of information provided by plaintiff to Dr. Klinghoffer. *See* N.T. at 38, 44, Nov. 13, 1981. Building on these efforts to impeach plaintiff's credibility, counsel for defendant focused during his closing argument on the honesty and consistency of various statements made by plaintiff to examining physicians concerning his physical condition. In his final summation, counsel for AMTRAK stated:

> The second thing I want to say to you is I would suggest to you that Mr. Poe is a very intelligent individual. He knows what to say. He knows how to phrase it. He knew what to tell the doctors. He knew what not to tell the doctors. He knew what not to tell Doctor Klinghoffer. He knew to omit the things about the January and the February [sic] and the missing time. He knew not to tell them about the fact that he was found fit to go back to work or Doctor Klinghoffer was never given that information before he arrived at his opinion. Doctor Klinghoffer was never given that information about Doctor Cramer's notes and you read them. He was working daily. He had no problems. *Mr. Poe is a con man. Don't let him con you.*

N.T. at 78, November 18, 1981 (emphasis added).

Plaintiff asserts that this remark clearly prejudiced him by improperly suggesting that he had a criminal record which indicated a tendency to fabricate or dissemble. However, because no evidence of any criminal conduct by Mr. Poe had been introduced and because the defense had focused, as it had a right to, on impeaching Mr. Poe's credibility, it is far more likely, in my view, that the jury simply regarded the "con man" characterization as an emphatic, metaphorical way of suggesting that plaintiff had not been forthcoming with his doctors and that therefore his narrative should not be fully credited. To be sure, it would have been better practice for AMTRAK's counsel to have chosen a less inflammatory phrase in his portrayal of plaintiff; on balance, however, I do not consider the remark to be so inappropriate that a new trial is warranted. In general, counsel may comment on credibility so long as blatant appeals to bias, or references to facts not in evidence are avoided. *See Lewis v. Penn Central, supra,* 459 F.2d at 470; *Duncan v. St. Louis-San Francisco Ry.,* 480 F.2d 79, 84 (8th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 69, 39 L.Ed.2d 109 (1973); *Compagnie Nationale Air France v. Port of New York Authority,* 427 F.2d 951, 956 (2d Cir. 1970). Since counsel for defendant confined his remarks to inconsistencies which could be reasonably inferred from the evidence and the remark was not blatantly prejudicial, I am satisfied that the jury's ability to consider the evidence dispassionately was not impaired.

## II

With respect to plaintiff's contention that the verdict is inadequate, it is helpful, as defendant's memorandum correctly points out, to analyze plaintiff's claim for damages by dividing it into two distinct categories: first, the period of disability from April 20, 1979, to August 13, 1979, during which time there was a stipulated net loss of wages of $4,800; and second, a period of disability commencing on August 20, 1980—plaintiff's last date of work with AMTRAK—and extending into the future. Plaintiff's claimed loss of future earnings was about $270,000. As described earlier, the jury awarded $4,800 for past lost earnings; $1,200 for pain and suffering; and no damages for future lost earnings.

It is clear from the components of the jury's verdict that the jury regarded the period of disability from April 20, 1979 (the date of the collision) to August 13, 1979 (the date plaintiff returned to full-time duty) as directly attributable to defendant's negligence, but that it regarded the additional claim of permanent disability from August 20, 1980 into the future as unrelated to the collision. This was the interpretation of the facts urged by AMTRAK's counsel in his closing argument and the jury apparently accepted this account. Such an interpretation appears to be a reasonable view fully supported by the testimony at trial. On the basis of testimony by Dr. Spencer—the railroad's physician who examined plaintiff—and admissions made by plaintiff's expert, Dr. Klinghoffer, during cross-examination, the jury could properly conclude that when Mr. Poe went back to work in August 1979, he had fully recovered from any injury he received in the train collision; that this collision had not worsened an underlying bone condition of his back from which he suffered prior to the collision; and that his complaints of back pain and final leave from work in August 1980 were due to this underlying condition and not to the April 20, 1979 collision. *See* N.T. at 24, 34, 38, 40–41 (Nov. 13, 1981); N.T. at 70–71 (Nov. 16, 1981). Thus, the verdict, while understandably discouraging for Mr. Poe, was not patently unfair or without support in the record. Given these considerations, I find that the verdict was adequate and, therefore, that no basis for granting a new trial has been established. *Cf. Silhol v. Levengood,* 55 F.R.D. 304 (E.D.Pa.1972); *Peterson v. Calmar S. S. Corp.,* 296 F.Supp. 8 (E.D. Pa.1969).