

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-20-2006

# Holmes v. McGuigan

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3359

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Holmes v. McGuigan" (2006). *2006 Decisions.* Paper 870.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/870

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3359
_____

DIANA M. HOLMES

Appellant

v.

KEVIN MCGUIGAN

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 04-cv-1299)
District Judge: Honorable Michael M. Baylson
Submitted Under Third Circuit LAR 34.1(a)
June 15, 2006

Before:  FISHER, CHAGARES and REAVLEY,* Circuit Judges.

_____

(Filed: June 20, 2006)
_____

OPINION OF THE COURT
_____

_____

*The Honorable Thomas M. Reavley, United States Circuit Judge for the Fifth
Circuit, sitting by designation.

CHAGARES, Circuit Judge.

In March 2003, Officer Kevin McGuigan of the Coatesville, Pennsylvania Police Department was on a speed detail and pulled over appellant Diana M. Holmes for speeding.  After a check of her driver's license revealed an outstanding warrant, McGuigan arrested her.  Holmes later filed a complaint under 42 U.S.C. § 1983 alleging that McGuigan's actions violated her Fourth and Fourteenth Amendment rights to be free from false arrest, malicious prosecution, and excessive force.  The District Court granted McGuigan's motion for partial summary judgment on the false-arrest and malicious-prosecution claims.  A jury then rejected her excessive-force claim.  Holmes now appeals.  Because we write only for the parties, we do not state the facts separately.  We will affirm the District Court's judgment.

I.

We begin with appellant's false arrest claim, and exercise plenary review over the District Court's grant of summary judgment. Antonelli v. New Jersey, 419 F.3d 267, 272 (3d Cir. 2005).  Like the District Court, we view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir. 2006).  If that review reveals no genuine issues of material fact, and if the moving party is entitled to judgment as a matter of law, then summary judgment is appropriate. See Fed. R. Civ. P. 56(c).

Our first inquiry in a section 1983 suit "is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" Baker v. McCollan, 443 U.S. 137, 140 (1979) (quoting 42 U.S.C. § 1983); see Wright v. City of Philadelphia, 409 F.3d 595, 601 (3d Cir. 2005). Thus, in a claim for false arrest predicated upon a violation of the Fourth Amendment, "probable cause is the threshold issue." See Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).

An automobile stop preceded Holmes' arrest, so we examine it first. An automobile stop is a Fourth-Amendment "seizure," and to pass constitutional muster it must be reasonable under the circumstances. Delaware v. Prouse, 440 U.S. 648, 653 (1979). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). In this case, the record establishes that McGuigan pulled Holmes over after his Accutrack speed-measuring device showed she was traveling at a speed of 43.5 mph in a 25 mph zone. Supp. App. 10-12. Holmes disagrees, however, and thinks McGuigan may have manipulated the Accutrack. According to her, this "factual dispute" prevents summary judgment. Pl. Br. at 13. We disagree because nothing in the record supports Holmes' naked assertion. See Lexington Ins. Co. v. Western Pa. Hosp., 423 F.3d 318, 333 (3d Cir. 2005) ("Speculation does not create a *genuine* issue of material fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (quoting Hedberg v. Indiana Bell Tel.

3

Co., Inc., 47 F.3d 928, 932 (7th Cir.1995)). The record tells only one story: McGuigan pulled Holmes over after he witnessed a traffic violation. Without evidence to support a contrary inference, no reasonable jury could find probable cause lacking.

Shortly after the initial stop, McGuigan arrested Holmes. We have recognized that "[p]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995). When the arresting officer relies on statements from fellow officers, "[p]robable cause exists only if the statements. . . are supported by actual facts that satisfy the probable cause standard." Rogers v. Powell, 120 F.3d 446, 453 (3d Cir. 1997). Here, McGuigan arrested Holmes after a computerized database and a conversation with his dispatcher informed him of an outstanding warrant for her arrest. The existence of probable cause thus turns on the validity of the underlying warrant. See Rogers, 130 F.3d at 553. Holmes stated that she thought the warrant had already been "taken care of," but her mistaken belief is irrelevant. She produced no evidence that would tend to undermine the warrant's validity. As a result, Holmes had no basis for a section 1983 false-arrest claim, and summary judgment was appropriate. See Baker, 443 U.S. at 143-44.

4

II.

Holmes also brought a malicious-prosecution claim against McGuigan based on the traffic citation he issued her for speeding. To prevail on that claim, Holmes had to prove, *inter alia*, that she "suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." See Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003). The District Court determined that Holmes' traffic citation did not result in such a deprivation, and we agree.

As we explained in Dibella v. Borough of Blackwood, 407 F.3d 599 (3d Cir. 2005), "[t]he type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself." Id. at 603. In Dibella, we held that the plaintiffs failed to establish a Fourth-Amendment seizure as a result of a legal proceeding because "they were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services." Id. Similarly, the only deprivation of liberty that resulted from Holmes' traffic citation was the requirement that she appear in court. Holmes makes no attempt to distinguish Dibella; she asks us to reconsider it, but it is not our place to do so. See O. Hommel Co. v. Ferro Corp., 659 F.2d 340, 354 (3d Cir.1981) ("[A] panel of this court cannot overrule a prior panel precedent."). We therefore must hold that having to

5

defend oneself against a speeding ticket is not a seizure. As such, the District Court's grant of summary judgment was proper.[1]

III.

Finally, Holmes seeks reversal of the jury's verdict on her excessive-force claim. Specifically, she contends that defense counsel's opening statement and closing argument contained improper comments "so prejudicial as to require a new trial." See Draper v. Airco, Inc., 580 F.2d 91, 94 (3d Cir. 1978). In civil trials, "improper comments during closing arguments rarely rise to the level of reversible error." Dunn v. HOVIC, 1 F.3d 1371, 1377 (3d Cir. 1993) (en banc) (internal quotation omitted). District courts have substantial discretion in this area, and their decisions "will be reversed only for a palpable abuse of discretion." See Lewis v. Penn Cent. Co., 459 F.2d 468 (3d Cir. 1972). The test is whether it is "reasonably probable that the verdict was influenced by the prejudicial statements." Draper, 580 F.2d at 97.

The first challenged comment occurred during the defense's opening statement. Holmes based her excessive-force claim on a wrist injury she attributed to McGuigan's handcuffs. McGuigan's attorney addressed that claim:

> [At her deposition,] she was asked . . . have you ever had any type of wrist
>
> problems, have you ever had any difficulties with your wrist prior to this

---

[1]In light of our analysis, we need not address McGuigan's alternative argument that he is entitled to qualified immunity because Holmes' constitutional right was not "clearly established." See Saucier v. Katz, 533 U.S. 194, 201 (2001).

6

incident? Under oath, at her deposition, she told me no. She told me no not

once, not twice, but three times. It was only after we then obtained medical

records and discovered that there was a history of carpal tunnel syndrome

she announces, well yea, I did have that. I missed time for work and it went

on for several months.

App 116-17.

There was nothing improper about this comment. The purpose of an opening

statement is to preview the evidence and make the trial easier for the jury to follow. See

United States v. Dinitz, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring). At trial,

Holmes testified that she had forgotten about her carpal tunnel syndrome and that

reviewing her medical records jogged her memory. App. 50-51; 86. Counsel's opening

statement did no more than preview this evidence, and the District Court's denial of the

motion for mistrial was proper.

Holmes also moved for a mistrial during closing argument. Holmes did not call

her treating physician to the stand, and counsel insinuated that this missing witness

undermined Holmes' claim. App. 129-30. Assuming *arguendo* that this comment was

improper,[2] it was still not an abuse of discretion to deny the motion for mistrial. Before

_____

[2]See Graves v. United States, 150 U.S. 118, 121 (1893) ("The rule. . . is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable."); United States v. Hines, 470 F.2d 225, 230 (3d Cir. 1972), cert. denied, 410 U.S. 968 (1973).

McGuigan's attorney made the allegedly improper comment, Holmes' counsel raised the issue himself. In his own closing argument, he urged the jury not to consider the treating physician's absence and dismissed the issue as a "red herring." Supp. App. 40. Since Holmes' counsel "opened the door" with respect to this issue, McGuigan's comment was merely responsive. See Bontempo v. Fenton, 692 F.2d 954, 959 (3d Cir. 1982), cert. denied, 460 U.S. 1055 (1983) ("To say that the prosecution violated [defendant's] rights by calling the jury's attention to something he had already argued is to retreat from reality. [Defendant] had made the point himself. If it was prejudicial, additional prosecutorial comment did not make it more so."). Accordingly, insofar as the jury was already exposed to the issue, it is not "reasonably probable" that McGuigan's attorney's comment influenced the verdict. See Draper, 580 F.2d at 97; cf. Darden v. Wainwright, 477 U.S. 168, 178-82 (1986) (explaining that a prosecutor's comments may not warrant reversal when invited by defense counsel). We thus conclude that the District Court acted well within its discretion by refusing to grant a mistrial.

IV.

Based on the foregoing, we will affirm the District Court's judgment.

8